Submitted on record and brief of accused May 2, accused
reprimanded and placed on probation for three years
June 19, 1975

IN RE COMPLAINT AS TO THE CONDUCT OF
MARVIN J. HOLLINGSWORTH, *Accused.*
536 P2d 1244

PER CURIAM.

ACCUSED REPRIMANDED AND PLACED ON PROBATION FOR
THREE YEARS.

This is a disciplinary proceeding in which the
accused is charged with failure to appear at five sched-
uled court appearances, and for call on several oc-
casions, and with negligence in the disbursement of
funds received in the settlement of a wrongful death

action. The trial committee found the accused guilty of failing to appear on three of the occasions alleged. The remainder of the non-appearance charges were either not proved or withdrawn by the Bar. The trial committee found the accused guilty of negligence in the disbursements of funds as alleged and concluded that accused's conduct constituted a breach of the Rules of Professional Conduct. The trial committee recommends that the accused be suspended from the practice of law for a period of one year. The accused admits the instances of carelessness of which he has been found guilty, but contends that he has eliminated the causes of his past problems and asks for leniency.

It is apparent that the admittedly unprofessional inattentiveness of the accused to the affairs of his clients and his lack of respect for the trial courts before whom he had cases stemmed from his inability to decide upon which career would receive his primary loyalty. In August of 1972, the accused became one-half owner of a small sawmill in the state of Washington. From the time of the purchase until he divested himself of his interest sometime before this disciplinary proceeding, accused involved himself in all aspects of the operation of the mill and devoted a vast amount of time to those activities.[1] Despite this extraordinary involvement, the accused attempted to carry on the practice of law, as a result of which the delinquencies recited above occurred. The neglect of his duties to the trial court which flowed from his devotion to other activities, though not unforeseeable, was not a calculated effort to flout the court. The accused testified that

"* * * [W]hen I took on this business I didn't

---

[1] According to the testimony of the accused: "I was actually working in the company, falling trees, fitting chokers, skinning cat and running various machines and designing various saw machines. I actually built a new kind of a mill to put together hip and ridge."

realize what I was getting into. I thought maybe I would have a business on the side, and the next thing you know I was more involved than what I wanted to be. That's why I sold the thing to Mr. Houston [his partner] and got out of it."

When the scope of the conflict between his duties as a lawyer and his business obligations became apparent to him, the accused first vacillated as to whether he should retire from the practice of law or from the sawmill business. During this period of indecision he did not take on any new matters but continued the cases he had already begun. But even with this limited practice, his repeated absence from his office and his over-reliance upon a secretary shared with others, resulted in continued delinquencies in meeting his obligations to the court.

As a result of these delinquencies, he caused considerable inconvenience to the courts and created the image of a lawyer having no respect for the courts before whom he practiced. Although there is no evidence reflecting upon the honesty and moral integrity of the accused, his failure to meet his professional responsibility in his relation to the courts is a matter of serious concern to the bench and bar. Coupled with these breaches of the Rules of Professional Responsibility is the accused's negligence in the disbursement of funds following a settlement in a wrongful death action. The disbursement which should have been made to the payee as the personal representative of the estate of the deceased victim was made to him personally, which resulted in a misappropriation by the payee and a loss to the decedent's estate. The accused, when asked to explain why he did not designate the payee as "personal representative," said:

"* * * The guy was a wild, rough guy, and he kept calling me at night and at home in the mornings, and it's a poor excuse, but he just kind of

intimidated me, and when the monies came I wrote the check out to him. That's the only explanation I have."

Again, although this is not an excuse for the conduct of the accused, it does not indicate a lack of good moral character but is, rather, a case of poor professional judgment and a failure to meet the standards of care and caution which a lawyer should exercise in the disposition of funds.

The accused recognizes and admits that he has violated the Rules of Professional Conduct as found by the trial committee. He contends, however, that the penalty of suspension recommended by the trial committee is too severe and that no purpose other than punishment would be served by suspension from practice for one year. In extenuation, he points to the fact that restitution has been made to the victims of his negligence in improperly disbursing funds.

Without minimizing the importance of the lawyer's obligation to follow the directions and the commands of the trial court in its efforts to expeditiously dispose of the cases before it, and with due regard for the importance of requiring members of the legal profession to meet the standards of care and competence in handling the funds of others, we are of the opinion that prescribing a one-year suspension for the misconduct of the accused in this case is, under the circumstances, too severe and inappropriate.

The accused has divested himself of outside involvements and has established an office with a full-time secretary. There is, therefore, the promise that the principal source of the accused's difficulties has been corrected. We think that justice will better be served if the accused is permitted to demonstrate that he has the ability and disposition to devote his undivided attention to the practice of his profession.

We do not feel, however, that a public reprimand alone is sufficient to assure the public and the bar that the derelictions which brought the accused before us may not be committed again. We provide, therefore, that in addition to this reprimand the accused shall be placed on probation for a period of three years, during which time he shall be required to report to the Director of Professional Responsibility of the Oregon State Bar every six months. In these reports he shall be required to affirm that he has maintained an office adequate to carry on the practice of law and has not neglected to make appearances in court as required, and that in all other respects he has conducted himself in a manner consistent with the Rules of Professional Responsibility. The Director of Professional Responsibility may require such further reports or disclosures as he deems appropriate.

Accused reprimanded and placed on probation for three years.