Argued November 2, accused reprimanded and placed on probation
December 23, 1976, petition for rehearing denied by opinion
January 27, 1977
(See 277 Or 89)

In re Complaint as to the Conduct of
# DONALD H. GREENE, *Accused.*

557 P2d 644

*Thomas E. Cooney,* of Morrison, Dunn, Cohen, Miller & Carney, Portland, argued the cause and filed a brief for accused.

*Richard L. Barton,* Portland, argued the cause for Oregon State Bar. *Robert D. Rankin,* of Hardy, Buttler, McEwen, Weiss & Newman, Portland, filed a brief for Oregon State Bar.

Before Denecke, Chief Justice, and McAllister, O'Connell, Holman, Howell and Lent, Justices.

PER CURIAM.

## PER CURIAM.

The accused was charged on five counts of unprofessional conduct arising out of his conduct as personal representative of the estate of Marie C. Guyot. The Trial Committee and the Disciplinary Review Board found the accused guilty of the charge of having a conflict of interest and of the "catch all" charge, conduct prejudicial to the public and the bar which if the accused were now applying for admission would prevent him from being admitted. The accused was found not guilty of the other counts.

The accused was retained in the last six months of 1971 to assist Mr. Callas, the newly-appointed public guardian for Multnomah County. Thereafter, the public guardian occasionally employed the accused to do legal work on estates managed by the public guardian.

Marie Guyot was an elderly widow of doubtful competency. She and her disabled son, Rene, lived in a house she owned. Adjoining was an old apartment house also owned by her. She continually failed to pay her taxes and in 1969 the county finally foreclosed. The county could not make Marie understand what had happened and in 1973 asked the public guardian, Mr. Callas, to assist. Mr Callas asked the accused to draft documents by which the court would appoint Mr. Callas as guardian for both Marie and her son. This was done. Marie Guyot died and Mr. Callas petitioned to have the accused appointed as personal representative, which was done.

The county informed the accused that it wanted to sell the property back to the estate if the estate could pay the $9,000 owed in taxes and interest. The accused tried to interest a certified public accountant and a real estate broker, Davis, into buying the property, but both thought it was a poor investment. Mr. Callas previously had a detailed appraisal made which appraised the property at $50,000. The accused was told by the real estate broker, Davis, that the appraisal was based upon several faulty assumptions; therefore,

the accused believed the $50,000 figure was not realistic.

The accused met with Marie Guyot's son and Eva Hirsch, Rene's sister, the heirs of Marie Guyot. He told them about the problem. Neither told him of joint savings accounts totaling over $75,000 held in their names with Marie Guyot. The accused did not ask them about any other assets or make any other inquiry about additional assets. He believed the real property was the only asset.

The accused asked Mr. Callas if he knew of any possible purchaser. Mr. Callas suggested an acquaintance, Mr. Witham. Mr. Witham expressed interest and while Mr. Witham had an attorney, he requested the accused to draft documents to organize a corporation as a buyer. The accused did so at no charge to Mr. Witham. The corporation offered to purchase the property for $35,000 with $10,000 down. This was the only offer received and the accused accepted. When he accepted he knew Mr. Callas was or was about to be a 50 per cent stockholder of the corporation. He also knew Mr. Callas remained guardian of the son, Rene. The accused paid the county and transferred the property to the corporation.

By actions of others the property has been repurchased by the estate with no loss to the estate.

The accused never attempted to rescind the sale to the corporation after he learned of the cash assets left by Marie.

The Trial Committee and the Review Board found the accused guilty of representing conflicting interests. The conflict of interest between the interests of Callas and the corporation and those of the estate is obvious. The accused now admits his guilt on this count.

The bar charged the accused with violating his fiduciary duty to the estate by knowingly selling the property of Marie Guyot at substantially less than its

fair market value. The evidence as to the value of the property was conflicting. The Trial Committee found the accused not guilty of violating his fiduciary duty but "at least negligent in performance of his legal obligations by failing to place said property on the open market in order to verify the validity of the price offered by the corporation." The Review Board agreed the accused was not guilty of this count, but found the accused "grossly negligent" in this regard.

The Bar charged the accused in two counts with a breach of ethics in negligently failing to discover that Marie Guyot had assets, other than the house and apartment, with which to satisfy the county's claim. The Trial Committee and the Review Board found him not guilty of unethical conduct but guilty of negligence in this regard.

The Bar realleged its first four counts discussed above. It then charged:

"The aforesaid conduct and course of conduct of the Accused alleged hereinabove in causes first to and including fourth of this Complaint, taken in the aggregate, was and is detrimental and prejudicial to the honor, integrity and standing of the profession of lawyer, the practice of law and the administration of justice in this State and was and is subversive to the public interest; it constituted and constitutes conduct rendering the Accused unfit to practice law in this State; and it was and is such conduct, in breach of the standards and rules of professional conduct established by law and by the Oregon State Bar, that, if the Accused were now applying for admission to practice law in this State for admission to the Oregon State Bar, his application should be denied."

The Trial Committee found that because of the accused representing conflicting interests and because of his negligence in probating the estate, his conduct, in the aggregate, was such that he was guilty of this count. The Review Board adopted the Trial Committee's finding on this count.

The Trial Committee recommended a public

reprimand. The Review Board also recommended a public reprimand. The Review Board, however, recommends that the accused be placed on probation which would remain in force until he passed the next attorney's examination; if he did not, the Board recommends he be suspended until he did pass. The Review Board made this recommendation because of its findings of repeated negligence on the part of the accused and his failure, even at the disciplinary hearing, to recognize even the appearance of impropriety on his part in this whole transaction.

Canon 6 of the Code of Professional Responsibility provides: "A lawyer should represent a client competently." Disciplinary Rule 6-101 (3) (A) provides: "A lawyer shall not: * * * (3) Neglect a legal matter entrusted to him."

We have held: "* * * we are not prepared to hold that isolated instances of ordinary negligence are alone sufficient to warrant disciplinary action." *In re Robert Neil Gygi,* 273 Or 443, 450-451, 541 P2d 1392 (1975). However, we held that negligence in the disbursement of funds was a ground for discipline. *In re Hollingsworth,* 272 Or 319, 536 P2d 1244 (1975). We imposed discipline in *In Re Reinmiller,* 213 Or 680, 325 P2d 773 (1958), for incompetency which consisted of delay in handling the client's business and failure to communicate. There was other and more serious conduct also proved in that case. Likewise, in *In Re Maurice C. Corcoran,* 201 Or 371, 270 P2d 158 (1954), we reprimanded the attorney for neglecting the work he undertook for his client. In *In Re Chester N. Anderson,* 244 Or 347, 418 P2d 498 (1966), the only charge which this court found had been substantiated and for which we reprimanded the accused was "that he was guilty of gross neglect in handling his clients' affairs."

We have no difficulty in finding that the accused was guilty of negligence in selling the property of the estate as he did and in failing to discover the other

assets of the estate. This conduct amounts to incompetent representation and together with the acknowledged conflict of interest provides ample cause for the imposition of discipline.

The accused is a 43-year-old man and he has been practicing law since 1959. He practiced law with his father until 1974 when he entered a two-man partnership. As far as the record reveals, the accused previously has not been found guilty of any unethical conduct. We are of the opinion that suspension from practice is not appropriate discipline, but we reprimand the accused. However, we also are of the opinion that a public reprimand alone is not sufficient.

The accused has been exposed to considerable probate practice; however, he was deficient in some elementary probate procedures. As stated, even at the disciplinary hearing the accused did not recognize that he was guilty of a conflict of interest. For these reasons, the accused is placed on probation until he furnishes evidence that he has successfully passed, with a grade of no less than B or its equivalent, courses at a law school of this state in Professional Responsibility and the Administration of Estates or courses covering the material found in courses bearing those names. This shall be accomplished by January 1, 1978; if it is not, the court will consider further disciplinary measures.

Reprimanded and placed on probation.