Argued July 11, accused suspended September 12, 1978

# In re: Complaint as to the Conduct of
# RICHARD C. BARTLETT, *Accused.*
## (TC 1329, SC 25691)
### 584 P2d 296

Albert J. Bannon, Portland, argued the cause and submitted a brief for the Oregon State Bar. With him on the brief was Joseph Voboril, Portland.

Thomas E. Cooney, Portland, argued the cause and filed a brief for the Accused.

Before Holman, Presiding Justice, and Howell, Bryson, Lent and Linde, Justices.

PER CURIAM.

**PER CURIAM.**

This is a disciplinary proceeding in which it is clear that the accused has violated the ethics of the profession. The Trial Board recommended suspension for one year. The Disciplinary Review Board recommended suspension for "not less than" six months. The accused contends that his misconduct merits no more than a public reprimand and a one-year probation period with a special condition that he take and pass a course in Legal Ethics "at Northwestern College of Law, Lewis and Clark College, in Portland, Oregon."[1] Alternatively, the accused suggests that if any suspension is imposed it be limited to 30 days. We find that six months' suspension from the practice of law is the appropriate sanction.

The accused has conceded that the attorney-client relationship existed between himself and clients named Johnson at the material times with which we are concerned. The Bar charged the accused with five unethical actions set forth in five causes of complaint. The first, second and fourth causes are concerned with dealings between the accused and the Johnsons with respect to certain duplexes. The third cause is concerned with dealings with Johnsons with respect to investment in a limited partnership in which the accused was a general partner. The fifth cause charges the accused with unethical conduct by his combined actions with respect to the first four causes. The Trial Board found the accused guilty of the first, second, third and fifth causes and not guilty of the fourth cause. The Disciplinary Review Board agreed with the Trial Board that the accused was guilty of the first, second and third causes and that he was not guilty of the fourth cause.[2]

---

[1] In *In re Greene,* 276 Or 1117, 557 P2d 644 (1976), *reh den,* 277 Or 89 (1977), we ordered such a condition of probation. We now question the appropriateness of such a condition.

[2] The Disciplinary Review Board requested guidance from the court with respect to the fifth, or "catchall," charge. We do not believe this to be a proper case in which to explore the ramifications of making that standard charge in disciplinary proceedings.

The accused was admitted to practice in 1964 in Oregon. He was an associate for three years with a firm which primarily practiced business and tax law. For the next year he associated with another firm primarily engaged in business and securities law. He then became a partner in a smaller firm which conducted a general practice until about 1971, at which time the emphasis of the partnership practice focused upon real estate and business law. For about one year prior to the hearing before the Trial Board, he had practiced as a sole practitioner.

Sometime prior to April 1, 1975, the Johnsons retained the accused as their attorney and paid to him a retainer to represent them in connection with a business dispute, the facts of which are not important to this decision. While the accused was acting as Johnsons' attorney in that matter, Johnsons acquired approximately $10,000, which they wished to invest. They were interested in purchasing a business and consulted the accused with respect to the purchase thereof. The owners of the business failed to make available to their broker's salesman, the accused, and the Johnsons sufficient information to evaluate the worth of the business, and the accused so advised them. There is no evidence that the accused so advised them in order to sell them his own property.

After the Johnsons had decided against purchase of that business, the accused made known to them the fact that he had certain interests in income-producing real property and that he was attempting to liquidate some of those investments in order to place himself in a better cash position. He first gave them the address of a 6-plex which he owned, and they drove by it a couple of times but decided that because of their inexperience this would not be a good venture for them.

We shall now consider the evidence with reference to the first and second causes of complaint together, since those charges both relate to a transaction which

we shall call the "duplex transaction." Following that, we shall consider the evidence concerning the third cause of complaint, which relates to what we shall call the "limited partnership transaction."[3]

## DUPLEX TRANSACTION

The accused was owner of the vendee's interest in certain contracts of sale for several duplexes in Gresham, Oregon. A short time after the Johnsons had looked at the accused's 6-plex, he took them to Gresham to see the duplexes. After considering the matter, the Johnsons decided to purchase two of the duplexes. The vendor, under the contracts in which the accused held the vendee's interest, was Standard Investment Company, which at the time of the assignment from the accused to Johnsons was the defendant in an action filed by the Securities & Exchange Commission in United States District Court, and Standard Investment Company's assets were being liquidated by a receiver. No conveyance of the property was possible without the receiver's consent. These facts were known to the accused at the time of his assignment of his interests to Johnsons. The accused did not even suggest to the Johnsons that they seek independent legal counsel before purchasing his interests in the duplexes.

The accused did not record the assignment of his contract to the Johnsons, nor did he furnish a title insurance report or title insurance to them. A title insurance report, presumably, would have shown the facts with respect to the SEC action and the receivership as well as a federal tax lien against the property arising out of a tax claim against one Major, who had sold the duplexes to Standard Investment Company.

The assignment from accused to Johnsons took place on April 1, 1975. In July 1975, the accused did

---

[3]We shall not review the evidence concerning the fourth charge relating to preliminary negotiations for a loan from Johnsons to accused. The loan never took place, and the Trial Board, the Disciplinary Review Board, and the court agree the accused is not guilty of that charge.

order a title report, which showed the federal tax lien arising out of the claim against Major and that the assignment to the Johnsons was unrecorded. The accused still failed to advise the Johnsons of either of these facts.

By September 1975, the federal government claimed and filed of record a further federal tax lien of approximately $4,000 on the duplexes. This lien arose out of taxes owed by a corporation in which the accused was an officer.

In early 1976 the Johnsons decided to sell their interest in the duplexes. Earnest money agreements were signed, but the deal collapsed when preliminary title reports showed the existence of the two tax liens and the lack of recordation of the assignment to Johnsons. The sale of the duplexes, had it been completed, would have resulted in a substantial profit to the Johnsons.

Ultimately the Johnsons sold both duplexes—one to a third party and the other back to the accused. Although there is room for argument as to whether they were in fact made whole, the Johnsons apparently conceded before the Trial Board that they believed that they had been made whole from a financial standpoint. For the purposes of this opinion, we assume that the Johnsons were made whole financially.

## LIMITED PARTNERSHIP TRANSACTION

Prior to the time the Johnsons went to Gresham to look at the duplexes, the accused, one Wong, and two other individuals had entered into a limited partnership in which those four were the general partners. The name of the partnership was "CONTROLLED ENVIRONMENTAL PRODUCTS, LTD." (hereinafter CEP).

On the day that the accused and Johnsons had gone to Gresham to look at the duplexes for the first time, the Johnsons were also introduced to Mr. Wong, and as

a part of the excursion to Gresham the Johnsons gave Mr. Wong a ride to the premises where CEP was to conduct its business of raising exotic mushrooms. Johnsons expressed an interest in investing in CEP, but the accused declined to consider it at that time. A few weeks later, however, the accused approached the Johnsons about investing in CEP. The accused concedes that he was still representing Johnsons as their attorney at that time. The accused told Johnsons that CEP needed another investor as a limited partner for $10,000, that no investment less than $10,000 would be acceptable, that it was necessary to commit to the investment within a few days, that the investment was venture capital and could be lost, and that the Johnsons could seek other advice about the investment.

Prior to investing $10,000 in CEP, Johnsons were shown a copy of the partnership agreement, which stated that:

> "The initial capital of the Partnership is the amount set forth below as allocated among the various members of the Partnership. Next to each Partner's name is his percentage interest in the Partnership and the number of Units held by him. All of the capital of the Partnership has been contributed in cash."

The agreement then went on to show that the accused had contributed $5,000, as had each of the other three general partners. In fact, the accused had not contributed $5,000, but had contributed only approximately $650. The accused did not inform the Johnsons as to the true extent of his capital contribution.

The Johnsons did invest $10,000 for a purported 5% limited partnership interest. At the time the Johnsons received their purported 5% limited partnership interest, 100% of the partnership interest was already outstanding, with each general partner owning 22½% and two earlier investing limited partners each owning 5%. The accused failed to file the certificate of limited partnership required by ORS 69.180.

[ 493 ]

CEP failed financially, and it appeared that Johnsons would lose their investment. Eventually, however, the Johnsons did receive back their $10,000 plus some attorney fees, and at the time of the hearing before the Trial Board, Johnsons indicated that they felt they had been made whole. We assume, for the purposes of this opinion, that they have been made financially whole with respect to the limited partnership transaction.

## THE SPECIFIC CHARGES

Based upon these facts were the four charges with which we are concerned. (As noted earlier, we do not consider in this opinion the fourth cause of complaint.)

*First cause:* Charges the accused with failing to advise the Johnsons to seek independent counsel regarding purchase of the duplexes.

*Second cause:* Charges the accused with failing properly to represent the Johnsons with respect to the purchase of the duplexes and in failing to provide a title report which would have shown encumbrances existing against the property.

*Third cause:* Charges the accused with failing to advise the Johnsons to seek independent counsel regarding the CEP investment, with misrepresenting to the Johnsons the amount of his capital contribution to CEP, and with failing to file the certificate of limited partnership required by ORS 69.180.

*Fifth cause:* Charges the accused with unethical conduct as a combination of his actions alleged in the specific charges.

## APPLICABLE DISCIPLINARY RULES[4]

"DR 1-102 Misconduct.
 "(A) A lawyer shall not:
 "(1) Violate a Disciplinary Rule.
 * * * * *

---

[4] "Code of Professional Responsibility" (record of approval and adoption of said Code perfected August 11, 1971), 40 Supreme Court Journal 398.

"(4) Engage in, conduct involving dishonesty, fraud, deceit, or misrepresentation.

* * * * *

"(6) Engage in any other conduct that adversely reflects on his fitness to practice law."

"DR 5-104 Limiting Business Relations With a Client.

"(A) A lawyer shall not enter into a business transaction with a client if they have differing interests therein and if the client expects the lawyer to exercise his professional judgment therein for the protection of the client, unless the client has consented after full disclosure."

"DR 6-101 Failing to Act Competently.

"(A) A lawyer shall not:

* * * * *

"(3) Neglect a legal matter entrusted to him."

Both the Trial Board and the Disciplinary Review Board found that the accused was guilty of unethical conduct under the first charge for failure to advise the Johnsons to seek independent legal counsel with respect to the purchase of the duplexes. The Trial Board found that this was a violation of DR 5-104(A). In this case it appears that the accused and his clients certainly had differing interests and, further, that the Johnsons expected the accused to exercise his professional judgment for their protection in this transaction. There is no record as to whether or not the accused made a "full disclosure" preceding the Johnsons' consent for the accused to act as their attorney. As noted above, the Trial Board did not focus upon this aspect; rather, the Trial Board focused on whether, in the circumstances, the accused should have advised the Johnsons to seek independent legal counsel concerning the sale.

The words of the disciplinary rule are not completely apposite. However, we note the following circumstances: In December 1967 the Board of Governors of the Oregon State Bar approved an opinion of the

[ 495 ]

Committee on Legal Ethics in a comparable matter. The opinion is short and bears quoting:

"OPINION No. 158
LOAN FROM CLIENT

"The following inquiry has been submitted to the committee:

" 'Lawyer has his own personal investments and wants to buy Blackacre. He needs $5,000, and Client Wealthy has offered to finance its acquisition. Lawyer enters into an arrangement under which he borrows $5,000 from client, gives client his note and mortgage and pays client an adequate rate of interest in accordance with the market rate at the time.

" 'Under the above set of facts, is Lawyer subject to criticism?'

"Except where the client is regularly engaged in the business of making mortgage loans, the attorney should urge the client to consult with other counsel for independent, disinterested advice.

"Amended and approved by the Board of Governors, December 16, 1967."

The accused was then a member of the Bar and is deemed to be familiar with Opinion No. 158. The presumption is strengthened by the fact that both the Bar and the accused, before the Trial Board and in this court, recognized the importance of the question as to whether the accused had advised the Johnsons to seek independent legal counsel concerning the purchase of the duplexes.

■ Although the exact words of DR 5-104 do not cover the duty to advise the client to seek independent legal advice, we infer from the record that the accused was certainly not taken by surprise. Lest there be any doubt concerning that duty as being encompassed by DR 5-104, we now hold that in any situation in which a lawyer shall enter into a business transaction with his client where they have differing interests and the client expects the lawyer to exercise his professional judgment in the transaction for the protection of the client, the lawyer must *at least advise* the client to

[ 496 ]

seek independent legal counsel. *Compare In re Brown,* 277 Or 121, 129, 559 P2d 884 (1977); *In re Boivin,* 271 Or 419, 427-28, 533 P2d 171 (1975).

The Disciplinary Review Board further approved the Trial Board's finding that, with respect to the duplexes, the accused violated DR 1-102(A) (1) and (6) and DR 6-101(A)(3) by transferring his interests in the duplexes to the Johnsons without the consent of the receiver, in failing timely to obtain a title report and title insurance, and in failing to record the assignment to Johnsons, which probably would have forestalled the attachment of the tax lien with respect to the corporation of which the accused was an officer. To put it another way, the accused did not represent his clients in this transaction in the manner and to the extent which he would presumably have done had he not been personally financially interested. The duty to represent the client as if the attorney himself is not an interested party may be found in one of our older cases. In *Kirchoff v. Bernstein,* 92 Or 378, 387, 181 P 746 (1919), Justice Harris stated for the majority of this court:

"The rules which define the duties of an attorney when dealing with his client are well established. The relation between an attorney and client has always been treated as one of special trust and confidence; and for that reason the law requires that the conduct of an attorney, when dealing with his client, shall be characterized by fairness, honesty and good faith. Indeed, so strict is the injunction not to take advantage of the client, that when a client challenges the fairness of a contract made with his attorney the latter has the burden of showing not only that he used no undue influence, but also that he gave to his client all the information and advice which it would have been his duty to give if he himself had not been interested, and that the transaction was as beneficial to the client as it would have been if the latter had dealt with a stranger. * * *"

Although dissenting from the result, Justice Bennett affirmed the above quotation and added:

"These are brave, strong words, and with every

syllable of them I entirely concur. They fix the duty of an attorney toward his client at a high standard—but not too high, when we consider the peculiarly confidential relation which an attorney enjoys; and the fact, that those with whom he deals, are oftentimes helpless from infancy or old age, and are generally ignorant of the law, and of their legal rights; and practically at the mercy of the lawyer who represents them. Such a declaration of the principles which govern attorneys, will be an inspiration to the lawyer who cares deeply for his profession and for its honor." 92 Or 413, 181 P at 757 (1919).

These quotations from *Kirchoff* were more recently expressly approved by this court in *Toomey v. Moore et ux,* 213 Or 422, 430-31, 325 P2d 805 (1958).

We are convinced, therefore, that the accused is guilty of the first and second charges.

With respect to the third charge, regarding the investment in CEP, the Trial Board and the Disciplinary Review Board found that the conduct of the accused violated DR 5-104(A) in failing to advise the Johnsons to obtain independent *legal* advice concerning this investment. The record discloses that the accused did inform the Johnsons they could obtain other advice about this investment, and the record further shows that the Johnsons did informally seek financial advice from one or more persons presumably qualified to give financial advice. The accused testified that he recalled advising the Johnsons to obtain legal advice but admitted that he did not insist that they seek independent legal counsel nor did he ever determine whether they had done so before completing that transaction. The Johnsons' testimony with respect to this matter may be fairly interpreted as being that they cannot recall that the accused advised them to seek independent legal counsel. In this state of the record, we are not convinced that the accused failed to at least advise the assistance of independent legal counsel.

We have no doubt whatsoever that the accused violated his duties so ably expressed in *Kirchoff v.*

[ 498 ]

*Bernstein, supra,* and DR 1-102(A)(1), (4) and (6), and DR 6-101(A)(3). It will be recalled that the partnership agreement shown to the Johnsons indicated that the general partners had each contributed $5,000 in cash. This was simply not true. The accused explained this as being the result of carelessness from having his secretary use as a model an agreement from another limited partnership in which general partners had in fact contributed cash at the time of the execution of the agreement. He contends that in this case he meant the agreement to be typed as follows: "has been or will be contributed in cash." Whether that is true or not, the agreement shown to the Johnsons was not accurate and was a misrepresentation. We do not find that it was an intentional misrepresentation, but, nonetheless, it was a misrepresentation calculated in the ordinary course of events to cause the Johnsons to believe that the accused had enough confidence in CEP to "put his money where his mouth was."

The failure to file the certificate of limited partnership required by ORS 69.180 is a clear violation of DR 6-101(A)(3).

The conduct of the accused, taken as a whole, with respect to the limited partnership transaction is in violation of DR 1-102(A)(1), (4) and (6).

■ The accused seeks to apologize for this conduct and to excuse himself by pointing out that he had spread himself too thin by the combined demands of his busy law practice and his varied business interests and, therefore, that he was slipping back and forth from the role of lawyer to businessman without paying as much attention as he should have to the high standard of conduct required of him in his role as lawyer. It is enough for us to point out that a busy practice is no excuse for violating ethical considerations. *See, for example, In re Reinmiller,* 213 Or 680, 707, 325 P2d 773 (1958). Neither is a demanding business schedule an excuse for violating ethical considerations. *See, for example, In re Hollingsworth,* 272 Or 319, 536 P2d 1244 (1975).

■ The accused points out that the Johnsons have been made financially whole, but this is of no significance, as this court has had occasion to remind the Bar time and again. The fact that a lawyer has sufficient financial resources to atone financially to his victimized clients is completely irrelevant. *See In re Pierson,* 280 Or 513, 518, 571 P2d 907 (1977), and cases there cited.

Lastly, the accused contends that the recommended discipline is too severe when his conduct is compared with that before the court in the following cases:

> *In re Maurice C. Corcoran,* 201 Or 371, 270 P2d 158 (1954).
> *In re Hollingsworth,* 272 Or 319, 536 P2d 1244 (1975).
> *In re Greene,* 276 Or 1117, 557 P2d 644 (1976); petition for rehearing denied, 277 Or 89 (1977).
> *In re Brown,* 277 Or 121, 559 P2d 884 (1977); petition for rehearing denied, 277 Or 731, 561 P2d 1030 (1977).

We believe the Bar has correctly distinguished these cases in its brief as follows:

> "These cases are inapposite. *In re Maurice C. Corcoran,* supra, involved an attorney who neglected an item of immigration business and was derelict in his probate of a small estate. *In re Hollingsworth,* supra, involved an attorney who was vacillating as to whether he should retire from the practice or spend full time on his new sawmill business. In the interim, the attorney failed to appear at five scheduled court appearances, and for call on several occasions. In addition, he was charged with negligence in the disbursement of funds received in the settlement of a wrongful death action. In the case of *In re Greene,* supra, the attorney was found guilty of representing conflicting interests (i.e. two different clients) and of negligence in failing to discover estate assets and selling property of the estate. Both the Trial Board and the Review Board recommended only a public reprimand.
>
> "These three cases are not similar at all to the facts involved in this appeal. In none of the three cases did the accused attorney enter into a series of business relationships with his client and then fail to adequately represent them. These cases are like the one at bar only in

that they involved instances where an attorney neglected to properly do his job. This case, however, involves more than that."

In *In re Brown, supra,* the attorney was charged with misconduct in violating his duty to refuse employment when his interests might impair his independent professional judgment, violation of DR 5-104(A) in business relations with his client and DR 1-102 in engaging in conduct involving misrepresentation and in borrowing money from a client. In that case the Trial Board and the Disciplinary Review Board recommended only a public reprimand as discipline. This court *increased* the sanction to suspension, however, saying:

"We deem the accumulated unethical acts of the accused warrant more than a public reprimand. We are of the opinion that the accused's unethical conduct requires that he be suspended from the practice of law * * *." 277 Or at 134.

The accused reminds us of the seriousness of the effect of disciplinary proceedings upon a lawyer. In *In re Maurice C. Corcoran, supra,* we did note that the humiliation which an accused suffers in disciplinary proceedings is "in itself a severe penalty." Be that as it may, it is not severe enough to serve as the extent of sanction in this case.

■ The accused is suspended from the practice of law for a period of six months from the entry of the mandate herein. The Oregon State Bar is awarded judgment against the accused for its costs and disbursements.

It is so ordered.