Argued December 4, 1978, accused suspended
for 60 days February 7, 1979

In re Complaint as to the conduct of
ROGER V. HOLM, *Accused.*
(No. 1434, SC 25767)

590 P2d 233

Thomas E. Cooney, of Morrison, Dunn, Cohen, Miller & Carney, Portland, argued the cause and filed a brief for accused.

Larry N. Sokol, Portland, argued the cause and filed a brief for the Oregon State Bar.

Before Denecke, Chief Justice, and Holman, Howell, Bryson, Lent and Linde, Justices.

PER CURIAM.

Holman, J., concurring opinion.

**PER CURIAM.**

This disciplinary proceeding arises out of accused's neglect and negligence in handling his clients' legal problems.

The matter was heard by the Trial Board on written stipulations of facts together with testimony from the complainant and the accused.

The accused's answer admitted the basic allegations of the Oregon State Bar's complaint; that he was dilatory and negligent in performing required and agreed legal services to his client; that such action on his part "was detrimental to the honor and integrity of the profession."

The only question raised by the briefs and record before this court is the reasonableness of the recommended discipline. The Trial Board found the accused guilty of the allegations in the complaint and recommended that the accused "be suspended from the practice of law in the State of Oregon for a period of six months and thereafter until he has made application for reinstatement and an affirmative showing, by evidence satisfactory to the Board of Governors and the Supreme Court, that he is, in all respects, again able and qualified, by good moral character and otherwise, to * * * perform the duties of an attorney * * *. The Disciplinary Review Board concurred in the findings and conclusions of the Trial Board and also found that accused violated disciplinary rule DR6-101(A)(3), which provides that a lawyer shall not neglect a legal matter entrusted to him. However, the Disciplinary Review Board recommended that the accused "receive a public reprimand; that he be placed on probation[1] for a period of one year;" and made numerous recommendations regarding the "conditions of such probation."

---

[1] *See In re Fuller*, 284 Or 273, 278, 586 P2d 1111 (1978).

In July, 1974, the accused was retained to represent the complainant, Mrs. Maxine Stauffer, in her marriage dissolution proceeding and property settlement with her husband. A default decree of divorce was entered December 5, 1975. On February 6, 1976, Mr. and Mrs. Stauffer met with accused in his office to accomplish some of the requirements of the property settlement agreement. That agreement provided that four parcels of real property previously held jointly would be conveyed to Mr. Stauffer and the remaining two parcels would be conveyed to Mrs. Stauffer. The accused had the parties sign five bargain and sale deeds[2] and he was to prepare the new deeds, record them, and return them to the respective parties. A final deed to the sixth parcel was executed on September 13, 1976.

The accused, through oversight, failed to record two of Mrs. Stauffer's deeds and one of Mr. Stauffer's deeds. He also failed to return any of the recorded deeds to either Mr. or Mrs. Stauffer. Mrs. Stauffer made frequent attempts to reach the accused by telephone (some 20 telephone calls) to find out what had happened to her deeds. The accused attempted to return these phone calls but was never successful in doing so. In early 1977 the accused finally sent Mrs. Stauffer a letter explaining that he had misplaced the deeds when he moved his office to a new location in October, 1976.

At this new location the accused "chiefly" operates a mortgage-real estate financing business. He stored the files from his law practice in two separate locations. Mrs. Stauffer's deeds were in her file in one of those locations; Mr. Stauffer's deeds, which had been misfiled into an unfiled mail file, were stored at the other location. For some reason, the accused did not look for the deeds in either storage location until after this matter was referred to the Bar.

---

[2] The accused testified:
   "Q  Now, do you remember, were these deeds that you signed, were they—do you remember if they were filled in or if they were blank?
   "A  They were blank."

[192]

Mrs. Stauffer continued to telephone the accused between January and April 1977, still trying to retrieve her deeds. On April 15, 1977, Mrs. Stauffer wrote to the Oregon State Bar complaining about the failure of accused to return her deeds and those of her former husband. The Bar sent the accused a letter requesting an early response which he received on April 22 but did not answer. On May 23 the Bar sent the accused a second letter. Thereafter, the accused found the missing deeds and arranged to have the three unrecorded deeds recorded. On May 27 the accused sent a letter to the Bar explaining, with minor errors, what had happened. Actually, three deeds, two of Mrs. Stauffer's and one of Mr. Stauffer's, had not been recorded. On May 27, 1977, accused forwarded Mrs. Stauffer's two deeds for recording and Mr. Stauffer's one remaining unrecorded deed. The complainant was required to employ an additional attorney to perfect her interest through the conveyances. The accused cooperated and turned his files, including all of the deeds, over to the new attorney.

The accused argues that a suspension for six months, as recommended by the Trial Committee, is excessive when compared with that rendered by this court in *In re Corcoran,* 201 Or 371, 270 P2d 158 (1954); *In re Hollingsworth,* 272 Or 319, 536 P2d 1244 (1975); *In re Greene,* 276 Or 1117, 557 P2d 644 (1976), modified on petition for rehearing, 277 Or 89 (1977);*In re Boivin,* 271 Or 419, 533 P2d 171 (1975); and *In re Paxton,* 280 Or 797, 572 P2d 1032 (1977). He accepts the public reprimand recommended by the Review Board but contends "that the probationary period with monthly reporting is something of a useless act because of his limited practice."

This court has reviewed a number of its decisions concerning an attorney's neglect in handling legal matters entrusted to him as provided in DR6-101(A)(3). It is apparent that each of the punishments rendered in all of the cases depends upon the facts

peculiar to each case. The negligence and neglect of the accused, as above described, is an example of why the public is inclined to hold members of the Bar in disrespect. The accused offered no evidence other than his willingness to cooperate that excused his actions.

We are of the opinion that the accused's misconduct requires that he be suspended from the practice of law for a period of 60 days from the entry of the mandate herein.

The Oregon State Bar is awarded judgment against accused for its costs and disbursements.

**HOLMAN, J.,** concurring.

In the past this court has made an understandable distinction in the way offending members of the Bar have been treated between those guilty of dishonesty and those guilty of procrastination and inattention to their clients' affairs. It has been reluctant to inflict severe sanctions for other than dishonesty.

Because of the number of cases presently coming to this court which concern legitimate complaints of procrastination and inattention, I have come to the conclusion that protection of the public requires that more severe sanctions be imposed for such offenses. Unfortunately, the effect upon the client may be just as disastrous as if dishonesty were involved.

In the present instance the accused did not even respond to the Bar's inquiry when he was originally informed of the complaint made against him. I would suspend him for a year to get his attention.