STATE ex rel OREGON STATE BAR,
*Plaintiff,*
*v.*
HOLLINGSWORTH,
*Defendant.*
(SC 23972)
595 P2d 484

Harvey W. Keller, Portland, argued the cause and filed the brief for plaintiff. With him on the brief was Paul G. Mackey, Portland.

No brief was filed for defendant.

Before Denecke, Chief Justice, and Tongue, Howell, Lent and Linde, Justices.

PER CURIAM.

## PER CURIAM.

This is a proceeding against a lawyer to show cause why he should not be adjudged guilty of violating an order of this court reprimanding him and placing him on probation for three years, and why he should not be punished therefor in accordance with the law.

These proceedings were instituted by the Oregon State Bar by a motion for such an order to show cause. It appears from that motion and supporting affidavits that on June 19, 1975, the defendant was reprimanded by this court and placed on probation for three years (*In re Hollingsworth,* 272 Or 319, 536 P2d 1244 (1975)); that the terms of probation required the defendant to report to the Director of Professional Responsibility of the Oregon State Bar every six months; that defendant had wilfully failed to make such reports every six months, as required by this court, and that, in addition, defendant had violated Canon 6, DR 6-101 and DR 1-102 of the Code of Professional Responsibility.

DR 6-101 provides that:

"A lawyer shall not:

"* * * * *

"(2) Handle a legal matter without preparation adequate in the circumstances.

"(3) Neglect a legal matter entrusted to him."

DR 1-102 provides that:

"A lawyer shall not:

"* * * * *

"(5) Engage in conduct that is prejudicial to the administration of justice.

"(6) Engage in any other conduct that adversely reflects on his fitness to practice law."

The alleged violations of these disciplinary rules arose out of the following alleged conduct by the defendant:

(1) In a bankruptcy matter defendant gave "unconscionably inadequate representation" in that he had his client sign, and then filed, bankruptcy

schedules that had been prepared approximately one and one-half years before the time of signing and filing and which contained out-of-date information, and also filed an erroneous "disclosure of compensation" form.

(2) In a "change of name" proceeding defendant was paid $150 as a retainer and filed a petition for the name change, but never completed the proceeding despite the fact that his client "on many occasions" contacted defendant "and/or employees of (his) office," inquiring about the disposition of the petition.

(3) In a dissolution of marriage proceeding in which defendant represented the husband, the defendant, after receiving a telephone call from the attorney representing the wife that the parties had informally agreed to modify the terms of a property settlement agreement and after agreeing to submit a decree which set out those modifications, nevertheless proceeded to submit a decree of dissolution which did not contain the agreed modifications.

After the issuance of the show cause order, a hearing was held before The Honorable P. K. Hammond, Senior Judge, as a Special Master appointed by this Court to take evidence and make findings for submission to the Court. After such a hearing, at which testimony and other evidence was received, including testimony by the defendant, the Special Master filed a report of his findings, which included the following:

(1) Regarding compliance with the Supreme Court Mandate (requiring defendant to make reports every six months):

"A. Defendant did receive a copy of the court's mandate in June, 1976, if he did not actually have knowledge of its content earlier.

"B. Defendant did not, regularly thereafter, make reports to the Oregon State Bar Director of Professional Responsibility required by the mandate of the Oregon Supreme Court."

(2) Regarding the bankruptcy matter:

"A. The 1977 documents filed by defendant in that proceeding were prepared by defendant in

1976 and had not been changed since such preparation.

"B. The attorney's disclosure of compensation form * * * filed with the Bankruptcy Court was in error."

(3) Regarding the name change matter:

"A. Defendant did prepare for [a client] a petition for name change for herself and two minor sons and did secure appointment of a guardian ad litem, but took no further action.

"B. Defendant did retain the fee paid to him by [the client] without doing anything further.

"C. [The client] did repeatedly, during the period mid-January to mid-February, 1977, make calls to defendant's office demanding that he pursue the name change matter and spoke to defendant's secretary. The evidence does not indicate whether defendant's secretary told him of the substance of [the client's] calls."

(4) Regarding the dissolution of marriage matter:

"A. Defendant, while representing [the husband], did have a Decree of Dissolution signed by Clackamas County Circuit Judge Jacobs on November 15, 1976 * * *, which decree did not contain the change and understanding of the parties as related to Mr. Hergert [the attorney representing the wife] when the parties met with him prior to the decree being signed.

"B. The evidence was not conclusive that defendant was apprised of the nature of the agreement between [the parties] reached in Mr. Hergert's office a few days before the original decree was signed.

"C. Defendant had been apprised, verbally, that there had been discussion between the parties in attorney Hergert's presence in the matter of modifying the agreement prior to the taking of the decree."

Defendant filed exceptions to these findings as follows:

(1) Regarding compliance with the Supreme Court Mandate:

"Defendant did make two personal visits with Mr. Hebert, and had contact with him on one occasion at the Multnomah County Courthouse. Defendant had also made telephone calls with Mr. Hebert."

(2) Regarding the bankruptcy matter:

"The error made by defendant was failing to change the date of the petition from 1976 to 1977, all other matters contained in the petition were accurate."

(3) Regarding the name change matter:

"Evidence showed that defendant did in fact take further action after the preparation of the documents by trying to locate [the client] through mail, telephone, and by personally going to her residence at her last known address."

(4) Regarding the dissolution of marriage matter:

"Defendant was not informed of any meeting and was not present when the parties met with [the attorney representing the wife] prior to the decree being signed.

"Evidence showed that after learning of the change in the agreement, the defendant filed an amended decree incorporating the changes agreed upon by [the parties]."

Defendant and the Oregon State Bar were then notified by this Court that they might each file briefs in advance of oral argument in this matter. The Oregon State Bar filed such a brief. Defendant chose to file no brief, despite notice that under Rule 8.10 of the Rules of Procedure of this Court a party may present oral argument only if the party has filed a brief. The matter was then submitted for decision after a brief oral statement by counsel representing the Oregon State Bar.

In the previous disciplinary proceeding against the defendant, the trial committee of the Oregon State Bar recommended that he be suspended from the practice of law for a period of one year because of his failure to appear at three scheduled Court appearances and because of his negligence in the disbursement of funds

[482]

received in the settlement of a wrongful death action. *In re Hollingsworth, supra,* 272 Or at 320. We described the results of defendant's conduct as follows (at 321):

> "* * * he caused considerable inconvenience to the courts and created the image of a lawyer having no respect for the courts before whom he practiced. Although there is no evidence reflecting upon the honesty and moral integrity of the accused, his failure to meet his professional responsibility in his relation to the courts is a matter of serious concern to the bench and bar * * *."

At that time it appeared that defendant, in addition to his practice of law, was involved in the operation of a business to which he devoted "a vast amount of time," but had since divested himself of such "outside involvements," and had established an office with a full-time secretary. We then said (at 322):

> "* * * There is, therefore, the promise that the principal source of the accused's difficulties has been corrected. We think that justice will better be served if the accused is permitted to demonstrate that he has the ability and disposition to devote his undivided attention to the practice of his profession."

Under those facts this Court, instead of suspending defendant from the practice of law, limited his discipline to a public reprimand, with probation for a period of three years.

Upon examination of the record in this case it appears that this defendant has continued to practice law in such a manner as to neglect legal matters entrusted to him by some of his clients (DR 6-101(3)), and has engaged in conduct that is prejudicial to the administration of justice and reflects adversely on his fitness to practice law (DR 1-102(5) and (6)). In addition, defendant has violated the terms of his probation by failing to report to the Director of Professional Responsibility of the Oregon State Bar every six months.

Under these facts and upon this record, we believe that defendant should be suspended from the practice of law for a period of one year and thereafter until he has made application for reinstatement and until he shall affirmatively show that he is in all respects again able and qualified to resume his position as a member of the bar of this state and that his resumption of the practice of law will not be detrimental to the public interest.

The Oregon State Bar is also awarded judgment against the defendant for its costs and disbursements.