393 So.2d 88 (1980)
LOUISIANA STATE BAR ASSOCIATION
v.
Ronald L. CAUSEY.
No. 60354.
Supreme Court of Louisiana.
September 3, 1980.
On Rehearing January 26, 1981.
*89 Thomas O. Collins, Jr., Executive Counsel, Harold J. Lamy, New Orleans, Roland J. Achee, Shreveport, Wood Brown, III, New Orleans, Sam J. D'Amico, Baton Rouge, Leonard Fuhrer, Alexandria, Edgar H. Lancaster, Jr., Tallulah, Alfred S. Landry, New Iberia, A. Russell Roberts, Metairie, John B. Scofield, Lake Charles, for applicant, Louisiana State Bar Association.
Walter P. Macmurdo, Baton Rouge, for respondent.

DISCIPLINARY PROCEEDING
DENNIS, Justice.[*]
The Louisiana State Bar Association, through its Committee on Professional Responsibility, brought this disciplinary proceeding against one of its members, Ronald L. Causey. We conclude that Mr. Causey violated the Code of Professional Responsibility by failing to represent his client competently because of neglect of a legal matter entrusted to him.
This action commenced by way of a letter of complaint dated February 2, 1976 from Carlo Maenza to the bar association. In this letter, Mr. Maenza, who was and remains in the custody of the Department of Corrections, alleged that despite paying respondent Causey two thousand dollars ($2,000) on November 20, 1975 to secure his release, he had not received any services. Based upon this complaint the Committee on Professional Responsibility conducted a preliminary investigation, concluding that a formal investigatory hearing was warranted.
*90 Thereafter, on July 25, 1977, petitioner instituted in this Court a suit seeking to suspend or otherwise discipline the respondent for alleged professional misconduct. A Commissioner was appointed pursuant to the provisions of Article XV, Section 6, of the Articles of Incorporation of the Louisiana State Bar Association (1971), approved by us as a rule of this Court. Hearings were held on August 13, 1978; September 13, 1978; September 21, 1978; and October 4, 1978. Based upon the evidence adduced at these hearings the Commissioner concluded that there was a violation of Disciplinary Rules 2-103, 2-106, 6-101 and 7-101. The Committee concurred in the findings of fact and conclusions of law as stated by the Commissioner. The respondent failed to formally except to the Commissioner's report; however, he did strenuously contest both the findings of fact and conclusions of law by brief and oral argument.
Preliminarily, we note that although failure of the respondent attorney to except to the Commissioner's report means its findings are confirmed as against him, we have held that the ultimate responsibility rests with this Court to determine whether, as a matter of law, such facts constitute the unethical conduct alleged, as well as for it to assess what penalty it deems appropriate if it finds disciplinary proceedings are warranted. Louisiana State Bar Association v. Edwins, 329 So.2d 437 (La.1976). Furthermore, the burden rests with the association to establish proof of misconduct by clear and convincing evidence. Louisiana State Bar Association v. Brown, 291 So.2d 385 (La.1974); Louisiana State Bar Association v. Edwins, supra.
The circumstances leading to this disciplinary action began in May or June of 1975 when Ronald Causey was initially contacted concerning his possible representation of Carlo Maenza, who had been placed by the Department of Corrections in the Forensic Unit of the East Louisiana State Hospital at Jackson, Louisiana. At that time Mr. Causey informed Maenza that it would cost twenty-five hundred dollars ($2,000 initial fee and $500 upon release) to help secure his release. On November 20, 1975 Mr. Maenza paid Ronald Causey two thousand dollars and officially retained him as his attorney.
The major question raised by this disciplinary action is what services were actually rendered by Ronald Causey after accepting Carlo Maenza as a client on November 20, 1975. The significant events which occurred were as follows: on February 2, 1976 Maenza filed his complaint against respondent with the bar association. On April 19, 1976 Causey enrolled as counsel of record for Maenza in the Twenty-Fourth Judicial District Court, replacing John F. Rau, the trial attorney. On April 21, 1976 Causey filed a petition for a writ of habeas corpus in the Twenty-Fourth Judicial District Court; this petition was summarily denied. On August 3, 1976, Causey filed a petition seeking executive clemency and pardon before the Board of Pardons of the State of Louisiana. This petition was denied July 14, 1977, and an appeal of the original denial of pardon, filed September 8, 1978 was also denied.
After being paid a fee of $2,000 the respondent failed to take action of any consequence toward Maenza's pardon for approximately an eight and one-half month period. He claimed to have sent his law clerk to Jefferson Parish to review the trial court record in Maenza's case, but the law clerk testified that he could not recall whether he performed this service. The petition for habeas corpus filed by the respondent does not appear to have been a serious attempt to obtain Maenza's release either by the writ process or by facilitating a later petition for pardon and executive clemency. The grounds asserted in the petition were obviously without merita claim of denial of due process based on the state's failure to make a favorable lie detector test available to the defendant for trial purposes; the trial judge summarily denied the writ because the evidence would not have been admissible at trial. Respondent testified that he conducted telephone conversations with Maenza and certain members of his family, visited Maenza at the hospital in Jackson, and conducted research. His former *91 law clerk testified regarding one visit with Maenza after his transfer to Angola in June, 1976. However, these matters would not have consumed a period of eight and one-half months, and the documents introduced by respondent from his file failed to convince the Commissioner or this Court that there was very much activity during this period.[1]
We agree with the Commissioner that Causey's inactivity constitutes a violation of Disciplinary Rule 6-101; specifically, we hold that respondent has violated DR 6-101(A)(3): he has failed to act competently by neglecting a legal matter entrusted to him.[2]
In Louisiana the attorney-client contract is not an arm's length transaction, especially as between a compensated attorney and an incarcerated prisoner. The parties do not enter the bargaining process as equals. One comes as a member of a highly privileged profession; the other is stripped of most of society's freedoms, including the ability freely to communicate and seek information. For this reason, the Disciplinary Rules, which seek to justify the attorney's privilege of practicing law by imposing responsibility for the welfare of his client, must be scrupulously obeyed in this kind of relationship.
The Ethical Considerations and Disciplinary Rules under Canon Six deal particularly with the lawyer's duty of competent performance. DR 6-101(A) provides three negative tests for competent performance: a lawyer should not handle a legal matter he is not competent to handle without seeking assistance from competent cocounsel; a lawyer should not handle any legal matter without adequate preparation; and a lawyer should not neglect any legal matter entrusted to him.
Applying this rule to the evidence of record, we conclude that the respondent was guilty of neglecting a legal matter entrusted to him. Although he was paid $2,000 in advance to start working on obtaining a pardon or executive clemency for Maenza, he did not file a petition for this relief until eight and one-half months later. This action came only after Maenza had filed a complaint against respondent with the bar association. Even then, it followed the bar association complaint by some six months.
The fact that respondent filed a petition for habeas corpus two months after the complaint was lodged with the bar association does not dispel his neglect of Maenza's case for pardon or clemency. Respondent's argument that it was filed in order to bolster a petition for a pardon to be filed later is unconvincing. He himself admitted that all of the evidence he hoped to educe at the habeas hearing could have been introduced independently before the pardon board. We find flimsy, likewise, respondent's assertion that he failed to file the pardon petition for eight and one-half months because he was awaiting time for Maenza's case to ripen. If Maenza's case was not ripe on November 20, 1975 when respondent accepted a fee of $2,000 and promised to start working on obtaining his release, either the fee should have not been accepted or the client should have been told the true circumstances of his case.
The Commissioner found that the same inactivity which we hold constitutes a violation of DR 6-101(A)(3) also amounts to a violation of DR 7-101.[3] We do not find *92 that the bar association met its burden of proof to show intentional misconduct on the respondent's part which is required for a violation of this rule. Respondent was neglectful and inactive, but the evidence is not clear and convincing that he intentionally failed to seek lawful objectives of his client or to carry out his contract of employment.
Nor can we agree with the Commissioner's conclusion that there was also a violation of Disciplinary Rule 2-103(A), (C), or (E).[4] Although Causey was initially contacted about Maenza's situation by a doctor at East Louisiana State Hospital, there is no clear and convincing evidence to indicate that Causey recommended himself to Maenza, that he requested the doctor to recommend him, or that he knew or should have known that his services were possibly the result of conduct prohibited by the Disciplinary Rule in question.
The Commissioner further concluded that there was a violation of Disciplinary Rule 2-106, which prohibits a lawyer from charging an excessive fee for legal services.[5] In light of the fact that respondent has not completed his duties of representing Maenza and testified that he would continue his efforts in the prisoner's behalf, we think it is premature to conclude on this record that the fee is excessive.
The purpose of lawyer disciplinary proceedings is not so much to punish the

* * * * * * *93 attorney as it is to maintain appropriate standards of professional conduct in order to protect the public and the administration of justice. Louisiana State Bar Association v. Quaid, 368 So.2d 1043 (La.1979); Louisiana State Bar Association v. Bensabat, 378 So.2d 380 (La.1979); ABA Joint Committee on Professional Discipline, Standards for Lawyer Disciplinary and Disability Proceedings, § 1.1, p. 1 (Tentative Draft June, 1978). The discipline to be imposed in a particular case, of course, will depend upon the seriousness and circumstances of the offense, fashioned in light of the purpose of lawyer discipline, taking into account aggravating and mitigating circumstances. Louisiana State Bar Association v. Bensabat, supra; ABA Joint Committee on Professional Discipline, Standards for Lawyer Disciplinary and Disability Proceedings, § 7.1, p. 44 (Tentative Draft June, 1978).
In view of these principles and our finding that respondent has violated Disciplinary Rule 6-101(A)(3), we adopt the Committee on Professional Responsibility's recommendation that respondent should be suspended from the practice of law. We note that the record does not reflect any moral turpitude or corrupt motives on the part of respondent Ronald Causey. This is rather a case of inattention and procrastination. Other courts have made a distinction for purposes of disciplinary action in cases of neglect where no outright dishonesty is proved. See State v. Graves, 153 So.2d 297 (Fla.1963); In Re Chapman, 69 Ill.2d 494, 14 Ill.Dec. 479, 372 N.E.2d 675 (1978); In Re Levin, 77 Ill.2d 205, 32 Ill.Dec. 870, 395 N.E.2d 1374 (1979); In Re Holm, 285 Or. 189, 590 P.2d 233 (1979). Although this Court is willing to recognize this distinction in this case, this does not mean that we condone respondent's behavior, or that we will not impose harsher sanctions in future cases if protection of the public so requires. Procrastination and inattention can have effects upon the client that are just as disastrous as if dishonesty were involved. In Re Holm, supra (Holman, J., concurring).

Decree
For the reasons discussed above, it is ordered, adjudged, and decreed that respondent Ronald L. Causey be suspended from the practice of law for ninety (90) days; provided, however, that an exception to this suspension shall exist with respect to the services which respondent is obliged to perform in behalf of his client, Carlo Maenza.
WATSON, J., dissents and assigns reasons.
WATSON, Judge, dissenting.
While promptness is highly desirable in service by a lawyer to his client, the court goes too far in attempting to police the bar by imposing suspension on an attorney for being dilatory. If the conclusion that Mr. Causey neglected the legal matter is correct, then a public reprimand would suffice.
Therefore, I respectfully dissent.

ON REHEARING
DIXON, Chief Justice.
In his application for rehearing respondent complains both of the factual finding of misconduct and the penalty, arguing that the publication of the notice of the pending disciplinary proceedings published for three years in the bar journal was punishment enough.
A review of the record discloses no factual error in the conclusion reached in our original opinion. Nor was the punishment imposed too severe.
Some delay in disciplinary proceedings is inherent in the process. Some delay in these proceedings might well be attributable to the commissioner, and we might even assume that is so. But it would be an assumption, because respondent never complained of delay before the case reached us. Consequently, there was no opportunity to make a record on the cause of much of the delay. The record does reflect that at least a large part of the delay was caused by respondent, when the hearings were recessed from time to time to allow him to gather and present documentary evidence to support his contentions.
*94 Nor is the punishment imposed too severe. A mere reprimand in this case would not protect the public from a repetition of the offense. To take money for legal services promised, and then to fail to deliver for many months, is a practice destructive of the respect and confidence due members of the bar, and a practice from which the public must be protected.
In our original opinion we did not cast the respondent with costs. Relator now properly seeks an amendment of the decree, which we grant.
For the reasons expressed above, our original opinion is reinstated; the decree is amended to cast the respondent with the costs of these proceedings, and is otherwise reinstated as the order of the court.
LEMMON, J., dissents.
MARCUS, J., dissents and assigns reasons.
WATSON, J., dissents for reasons originally assigned.
MARCUS, Justice (dissenting).
I dissent, being of the opinion that a reprimand would be adequate punishment under the circumstances of this case.
NOTES
[*] The Honorable Frederick S. Ellis participated in this decision as an Associate Justice pro tempore.
[1] Dispute arose at the Commissioner's hearings over respondent's repeated failure to produce the original of several documents offered by him into evidence to show activity on behalf of the client Maenza. The Commissioner decided to give these documents no weight because the originals were never produced. We have reviewed these documents and, giving them full weight, we find that they do not rebut the charges of inactivity and neglect levelled against the respondent.
[2] DR 6-101 Failing to Act Competently

(A) A lawyer shall not:
(1) Handle a legal matter which he knows or should know that he is not competent to handle, without associating with him a lawyer who is competent to handle it.
(2) Handle a legal matter without preparation adequate in the circumstances.
(3) Neglect a legal matter entrusted to him.
[3] DR 7-101 Representing a Client Zealously.

(A) A lawyer shall not intentionally:
(1) Fail to seek the lawful objectives of his client through reasonably available means permitted by law and the Disciplinary Rules, except as provided by DR 7-101(B). A lawyer does not violate this Disciplinary Rule, however, by acceding to reasonable requests of opposing counsel which do not prejudice the rights of his client, by being punctual in fulfilling all professional commitments, by avoiding offensive tactics, or by treating with courtesy and consideration all persons involved in the legal process.
(2) Fail to carry out a contract of employment entered into with a client for professional services, but he may withdraw as permitted under DR 2-110, DR 5-102, and DR 5-105.
(3) Prejudice or damage his client during the course of the professional relationship, except as required under DR 7-102(B).
(B) In his representation of a client, a lawyer may:
(1) Where permissible, exercise his professional judgment to waive or fail to assert a right or position of his client.
(2) Refuse to aid or participate in conduct that he believes to be unlawful, even though there is some support for an argument that the conduct is legal.
[4] The rule provides in pertinent part:

DR 2-103 Recommendation of Professional Employment.
(A) A lawyer shall not recommend employment, as a private practitioner, of himself, his partner, or associate to a non-lawyer who has not sought his advice regarding employment of a lawyer.
* * * * * *
(C) A lawyer shall not request a person or organization to recommend or promote the use of his services or those of his partner or associate, or any other lawyer affiliated with him or his firm, as a private practitioner, except that ....
(E) A lawyer shall not accept employment when he knows or it is obvious that the person who seeks his services does so as a result of conduct prohibited under this Disciplinary Rule.
[5] DR 2-106 Fees for Legal Services.

(A) A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee.
(B) A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee. Factors to be considered as guides in determining the reasonableness of a fee include the following:
(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.
(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.
(3) The fee customarily charged in the locality for similar legal services.
(4) The amount involved and the results obtained.
(5) The time limitations imposed by the client or by the circumstances.
(6) The nature and length of the professional relationship with the client.
(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.
(8) Whether the fee is fixed or contingent.
(C) A lawyer shall not enter into an arrangement for, charge, or collect a contingent fee for representing a defendant in a criminal case.