Argued and submitted February 9, charged dismissed March 2, 1982

In Re: Complaint as to the Conduct of
# MOE M. TONKON,
*Accused.*

## (OSB 78-69, SC 28190)

642 P2d 660

Joe D. Bailey, Portland, argued the cause for accused. With him on the briefs were David C. Landis and Landis, Aebi & Bailey, P.C., Portland.

William F. Hoelscher, Beaverton, argued the cause for the Oregon State Bar. With him on the brief was David J. Edstrom, Portland.

PER CURIAM.

## PER CURIAM.

By a disciplinary complaint heard before a trial board and reviewed by the Disciplinary Review Board, the Oregon State Bar brings before the court the issue whether an attorney violates the Code of Professional Responsibility whenever he prepares a will that contains a bequest for himself without advising the testator to obtain independent legal advice. We hold that this action in itself does not constitute a violation and that the accused committed no violation in this case.

The Oregon State Bar's complaint alleged two causes of complaint, both arising out of the accused's representation of Alvin E. Gunderson. The events giving rise to the first cause of complaint, as stated by the bar and admitted by the accused, may be summarized as follows.

The accused represented Alvin E. Gunderson for many years until the date of Gunderson's death. He prepared a number of wills and codicils for Gunderson during the years from 1963 to 1971. The final will, prepared on December 13, 1971, made a bequest of $75,000 to the accused. At the time of the execution of the will, Gunderson had been seriously ill for some time. He was physically unable to sign the will, and his mental capacity was somewhat diminished. Gunderson died in 1972, leaving a gross estate of approximately $6,000,000.

Apart from the pleadings, it is undisputed that Mr. Gunderson on his own initiative instructed the accused to prepare the 1971 will in order to include the bequests to the accused and another close associate, and to add a charity to the beneficiaries under the residuary clause. The accused was not only Gunderson's lawyer but also a close personal friend and managed Gunderson's personal financial transactions under a power of attorney. It also is undisputed that the accused did not advise Gunderson to consult another lawyer concerning the bequest to himself.

The bar relies primarily on Canon 5 ("A lawyer should exercise independent professional judgment on behalf of a client") and Disciplinary Rule DR 5-101(A), along with certain other rules and this court's decision in *In*

*re Jones,* 254 Or 617, 462 P2d 680 (1969).[1] The bar also cites Ethical Consideration 5-5 of the Code of Professional Responsibility as originally proposed by the American Bar Association and argues that conduct contrary to its terms should be held a violation of DR 5-101(A). EC 5-5 states:

"A lawyer should not suggest to his client that a gift be made to himself or for his benefit. If a lawyer accepts a gift from his client, he is peculiarly susceptible to the charge that he unduly influenced or over-reached the client. If a client voluntarily offers to make a gift to his lawyer, the lawyer may accept the gift, but before doing so, he should urge that his client secure disinterested advice from an independent, competent person who is cognizant of the circumstances. Other than in exceptional circumstances, a lawyer should insist that an instrument in which his client desires to name him beneficially be prepared by another lawyer selected by the client."

The Trial Board rejected this argument. It found:

"(a) The thrust of the prosecution's Complaint, evidence and arguments, has been that the Accused violated

---

[1] DR 5-101(A) states:

"Except with the consent of his client after full disclosure, a lawyer shall not accept employment if the exercise of his professional judgment on behalf of his client will be or reasonably may be affected by his own financial, business, property, or personal interests."

The other sources cited for the bar's first cause of complaint are ORS 9.480(1) and Canon 1, DR 1-102(A)(1) and (6). They provide:

ORS 9.480:

"The Supreme Court may disbar, suspend or reprimand a member of the bar whenever, upon proper proceedings for that purpose, it appears to the court that:

"(1) He has committed an act or carried on a course of conduct of such nature that, if he were applying for admission to the bar, his application should be denied; . . . . "

Canon 1:

"A lawyer should assist in maintaining the integrity and competence of the legal profession"

"DR 1-102 Misconduct.

"(A) A lawyer shall not:

"(1) Violate a Disciplinary Rule.

* * * *

"(6) Engage in any other conduct that adversely reflects on his fitness to practice law."

Ethical Consideration 5-5, which is discussed under Canon 5 entitled, *'A Lawyer Should Exercise Independent Professional Judgment on Behalf of a Client.'* The Trial Board specifically finds Ethical Considerations are not mandatory or enforceable prohibitions for lawyer's conduct recited within the Consideration and that an Oregon lawyer cannot be prosecuted for violation of Ethical Consideration.

"(b) The Trial Board further finds, under the evidence, the conduct of the Accused did not rise to, or involve, a situation where the Accused failed to exercise independent professional judgment on behalf of his client, nor was there a situation where the Accused should have refused employment because his client's interest might reasonably have been or was impaired by his professional judgment."

The Trial Board also found, "under the evidence, that the Accused did not violate a Disciplinary Rule or engage in conduct that adversely reflects on his fitness to practice law."

The Disciplinary Review Board disagreed with the Trial Board. Without citing any disciplinary rule, it rested its conclusion on this court's opinion in *In re Jones, supra.* We deal with these issues in turn.

■ The Trial Board was correct with respect to EC 5-5. The Ethical Considerations of the ABA's draft Code of Professional Responsibility were not included as part of the Code of Professional Responsibility proposed by the Oregon State Bar and adopted by this court on August 11, 1971. ORS 9.490.[2] They were intended as guides to professional conduct but not as tests for disqualifying or otherwise disciplining members of the bar, which explains the careful use of "should" instead of the "shall" of the Disciplinary Rules.[3] The Ethical Considerations have no official status as grounds for disciplinary action.

---

[2] *See, In re Bartlett,* 283 Or 487, 494 n. 4, 584 P2d 296 (1978).

[3] The chairman of the committee that drafted the Code of Professional Responsibility wrote of the difference between Ethical Considerations and Disciplinary Rules:

"The Canons are single-sentence generalizations which state the basic duties of lawyers. Following each Canon are Ethical Considerations and Disciplinary Rules derived from the Canons. The Ethical Considerations set forth the level of professional activity and conduct to which the conscientious

■    *In re Jones, supra,* reached this court before the adoption of the Code of Professional Responsibility. Jones had prepared a will for a single woman which left him the entire estate subject only to a testamentary trust for her mother. The Board of Governors, which then was the hearing body, found that by failing to advise the testatrix to obtain independent legal advice and referring her to a lawyer employed in his office for execution of the will, the accused had exercised undue influence on the testatrix. The accused pleaded that his failure was only an "error in judgment." The court noted that the accused was not charged with actually persuading his client to leave her property to him, as had been true in prior cases,[4] but it stated that "[a]ny lawyer should know, without being told" to withdraw from the preparation of a will which includes a disposition for the lawyer's benefit: "Poor judgment does not excuse such an inflexible ethical rule." 254 Or at 618. Therefore Jones's conduct was deemed to deserve a reprimand.

So far as the foregoing quotation implies that one may be disbarred, suspended, or otherwise penalized for what "any lawyer should know without being told" without reference to any disciplinary rule, this approach to professional discipline was superseded by codification of the disciplinary rules. *Cf. Megdal v. Board of Dental Examiners,* 288 Or 293, 307, 605 P2d 273 (1980). The rule of *In re Jones* survived the adoption of the Code of Professional Responsibility only if it can be based on one of the code's disciplinary rules. We therefore examine the most directly relevant rule cited by the bar, DR 5-101(A). It states:

"(A)  Except with the consent of his client after full disclosure, a lawyer shall not accept employment if the exercise of his professional judgment on behalf of his client will be or reasonably may be affected by his own financial, business, property, or personal interests."

---

practitioner should aspire; such activity and conduct cannot be commanded but only encouraged. In contrast, the Disciplinary Rules are proscriptive in character and define minimum standards of conduct which a lawyer must observe or be subject to disciplinary action."

Wright, *The Code of Professional Responsibility: Its History and Objectives,* 24 Ark L Rev 1, 1-2 (1970).

[4] *In re Millen v. Kneeland,* 233 Or 241, 377 P2d 861 (1963), *In re Moore,* 218 Or 403, 345 P2d 411 (1959).

We do not find in DR 5-101(A) an unvarying prohibition against participating in the preparation of an instrument that makes a gift to the lawyer unless the donor has first been advised to obtain the services of another lawyer. The rule refers to refusing professional employment if the exercise of the lawyer's professional judgment on behalf of his client either "will be" affected by the lawyer's interest or if it "reasonably may be" so affected. In either event, the lawyer may proceed only "with the consent of his client after full disclosure."

"Will be affected" is a prediction with a high degree of certainty. It plainly requires a determination on the facts of each case. "May be affected" contemplates a much lower degree of certainty; a substantial risk suffices. It might state an absolute prophylactic rule but for the qualifying adverb "reasonably," which implies that the apprehension of impaired professional judgment must be reasonable under the circumstances.[5] This will be self-evident in many dealings between lawyers and clients in which the lawyer has other than a professional interest. When these involve business transactions, in which both the client and the lawyer have personal financial objectives, DR 5-104 restricts the lawyer in entering into the transaction rather than in accepting a professional assignment, as DR 5-101 does, and the restriction in DR 5-104 is not qualified by the word "reasonably." In such cases we have held that the client's consent "after full disclosure" requires that the lawyer's disclosure include the advisability of obtaining independent legal advice. *See In re Bartlett,* 283 Or 487, 584 P2d 296 (1978). The difference between the two rules suggests that when the client has a business or other financial objective differing from that of the lawyer, DR 5-104 always requires that this advice be given, whereas in situations in which the client does not have a differing objective, such as in making a proposed gift to the lawyer, DR 5-101 requires disclosure and consent unless the lawyer's professional judgment on behalf of the client may not "reasonably" be found to be endangered by his interest in

---

[5] We assume that "reasonably may be affected" was not intended to mean literally that the effect may be reasonable, but that it was a careless shortening of "reasonably may be expected to be affected."

the transaction. Such a danger is a "reasonable" inference on facts such as those of *In re Jones, supra,* unless the evidence leads to a contrary result on the facts of a concrete case.[6]

We find that this is such a case. Mr. Tonkon had over several years prepared a series of wills and codicils for Mr. Gunderson under which Tonkon was not a beneficiary. The execution of Gunderson's directive to add bequests to himself along with two other beneficiaries, in sums which, though substantial, represented a minor fraction of the estate, did not require the kind of professional judgment that would be threatened by a gift. There was no doubt of "consent of his client after full disclosure" within the opening qualification of DR 5-101(A); obviously the client knew that the bequest was in his lawyer's financial interest and consented to it, for that was its intended purpose. In this instance the advice to consult another lawyer apparently would have been an idle gesture, which is not to say that it should not have been made.

On these facts, the trial board found, as quoted above, that the accused's professional judgment on behalf of his client neither was nor reasonably might have been impaired. The Disciplinary Review Board similarly found "that the testator originated the bequest, that the Accused did not in any way suggest or solicit the bequest [or] practice any undue influence or over-reaching, that the testator was competent when he executed the will, and that the testator doubtless would have spurned any advice the Accused might have given regarding obtaining independent counsel," and also that the accused was the testator's close personal friend and "a natural object of the testator's bounty." As stated above, the Disciplinary Review Board nevertheless concluded that the accused's conduct was unprofessional under the rule of *In re Jones, supra.* For the reasons we have stated, we agree with the Trial Board that the Bar's first cause of complaint should be dismissed.

---

[6] EC 5-5, *supra,* similarly is qualified by recognition of "exceptional circumstances." While the parties have focused on briefing what may be meant by "exceptional circumstances," we hold that the text needing interpretation is "reasonably may be affected," but the question under DR 5-101 similarly is whether the facts negate the inference of potentially impaired professional judgment.

The second cause of complaint concerned the accused's role in having Mr. Gunderson's will admitted to probate. It alleged that the accused previously had represented Mr. Gunderson's daughter-in-law Saundra and her children and that the accused inadvertently failed to mention the children as heirs in the petition for probate of the will and failed to notify them of the petition, and that he continued to represent Saundra without disclosing his potential conflict of interest as a beneficiary under the will.[7] In answer, the accused states that his representation of Saundra Gunderson concerned only matters other than Alvin Gunderson's will, and that the lawyer's preparation of a will for a client cannot by itself disqualify him from serving everyone potentially interested in the testator's estate in matters unrelated to the will. The accused answers the charge of failure to notify the children of the petition to probate the will by arguing that, although lawyers have been disciplined for neglect of their client's affairs, none has been censured for an isolated instance of inadvertent oversight.

---

[7] The complaint cited the following:

ORS 113.035(5):

"The names, relationship to the decedent and post-office addresses of persons who are or would be his heirs upon his death inteststate, and the ages *of any who are minors*."

ORS 113.145(1):

"Upon his appointment a personal representative shall deliver or mail to the devisees and heirs named in the petition for appointment of a personal representative, at the addresses therein shown, information that shall include: . . . ."

Canon 1:

"A lawyer should Assist in Maintaining the Integrity and Competence of the Legal Profession."

"DR 1-102: Misconduct.

"(A) A lawyer shall not:

"(1) Violate a Disciplinary Rule.

* * * *

"(6) Engage in any other conduct that adversely reflects on his fitness to practice law."

Canon 5:

"A Lawyer Should Exercise Independent Professional Judgment on Behalf of a Client"

The Trial Board and the Disciplinary Review Board both found the accused not guilty of the charges stated in the second cause of complaint. The Oregon State Bar's brief in this court states that in view of these findings, the bar would not pursue the charges of neglect and of representation of clients with conflicting interests. We agree with the decision of the Trial Board and the Disciplinary Review Board.

The charges against the accused are dismissed.

---

"DR 5-105: Refusing to Accept or Continue Employment if the Interest of Another Client May Impair the Independent Professional Judgment of the Lawyer.

"(A) A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, except to the extent permitted under DR 5-105 (C).

"(B) A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, except to the extent permitted under DR 5-105(C).

"(C) In the situations covered by DR 5-105 (A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each.

"(D) If a lawyer is required to decline employment or to withdraw from employment under a disciplinary rule, except DR 2-110 (B)(3), no partner or associate of his or his firm may accept or continue such employment."

Canon 6:

"A Lawyer Should Represent a Client Competently"

"DR 6-101 Failing to Act Competently.

"(A) A lawyer shall not:

\* \* \* \*

"(3) Neglect a legal matter entrusted to him."

ORS 9.480:

"The Supreme Court may disbar, suspend or reprimand a member of the bar whenever, upon proper proceedings for that purpose, it appears to the court that:

"(1) He has committed an act or carried on a course of conduct of such nature that, if he were applying for admission to the bar, his application should be denied; . . . . "