Argued and submitted February 10, accused suspended for seven months
April 19, 1983

In Re: Complaint as to the Conduct of

PETER S. RUDIE,
*Accused.*

(OSB 81-42, SC 28951)

662 P2d 321

George S. Frum of Frum & Bledsoe, Salem, argued the
cause and filed a brief for the Accused.

Jean W. Christensen, Salem, argued the cause and filed a brief for the Oregon State Bar.

Before Lent, Chief Justice, and Peterson, Campbell, Roberts, Carson and Jones, Justices.

PER CURIAM

## PER CURIAM

The primary issue is the appropriate sanction to be imposed for conduct of the accused that was in violation of certain disciplinary rules contained in the Code of Professional Conduct.

The following facts are taken from the accused's brief in this court:

> "The accused at the time of trial of the Hoekstre matter was 29 years of age, had been admitted to practice law in the State of Oregon in 1975 and engaged in the practice of law in Salem, Oregon. After undertaking to represent Bert W. Harrison and Golden B Products, Inc. in a lawsuit filed against them by Frank D. Hoekstre and Shirley E. Hoekstre, the accused conducted his representation of said clients without preparation adequate under the circumstances. He failed to contact or consult with his clients, did not keep his clients informed, and he failed to adequately discuss the case with his clients or examine their records prior to the night before the trial was to begin.[1] After the trial of the case and while the case was under advisement, the accused did not respond to phone calls and correspondence from the trial judge. Approximately eleven months after the trial the court entered a judgment against his clients in the amount of $65,000.00 plus $10,000.00 attorneys fees and costs. At no time in the interim did the accused discuss the case with his clients.
>
> "On the last day of the trial his clients advised the accused that they wished to appeal if the judgment were adverse. After the judgment was entered, the accused failed to notify them of that fact, failed to advise them concerning appellate procedures, failed to advise them of the need for an undertaking, and failed to perfect the appeal on their behalf."

The Oregon State Bar charged that such conduct violated the precepts of DR 6-101(A)(2) and (3), which provide:

> "(A) A lawyer shall not:
>
> "* * * * *
>
> "(2) Handle a legal matter without preparation adequate in the circumstances.

---

[1] The accused undertook the matter in the fall of 1976; trial was in July, 1979.

"(3) Neglect a legal matter entrusted to him."

As did the Trial Board and the Disciplinary Review Board, we find the accused violated those disciplinary rules.[2]

The Bar further charged the accused violated DR 7-101(A)(2), which provides:

"(A) A lawyer shall not intentionally:

"* * * * *

"(2) Fail to carry out a contract of employment entered into with a client for professional services * * *."

We find it to be clear that there was a contract to perform professional services by way of undertaking an appeal from a judgment that might be adverse to these clients. There is nothing in the stated facts to indicate that the accused failed to carry out the contract because of excusable neglect or even mere negligence. His failure was intentional in the same sense as is that of an employee who, without good cause, does not come to work. We conclude that, within the meaning of that disciplinary rule, he intentionally failed to carry out the contract of employment.

The Bar's complaint further charged the accused with violation of DR 7-101(A)(3), which provides that a lawyer shall not "intentionally: [p]rejudice or damage his client during the course of the professional relationship."

The Trial Board and the Disciplinary Review Board found that the accused violated DR 7-101(A)(3), the Trial Board putting it as follows:

"The accused's neglect and failure to prepare and his failure to present the claims of his clients and to perfect their appeal prejudiced and damaged his clients and violated [the Rule]."

---

[2] We have noted that "neglect" as used in DR 6-101(A)(3) is not synonomous with actionable negligence. *In re Chambers,* 292 Or 670, 674, fn 3, 642 P2d 286 (1982). We here note further that the relationship between DR 6-101(A)(3) and this court's statutory authority to discipline members of the bar under ORS 9.480(6), referring to "gross or repeated negligence," may be deserving of exploration. We decline to do so in this case because no issue thereanent has been raised by this accused and because, as later appears, this instance of neglect is not an isolated one.

We agree that the omissions of the accused prejudiced and damaged his clients, but that is not enough to establish a violation of the disciplinary rule.

The rule prohibits a lawyer from "intentionally" prejudicing or damaging his client. In DR 7-101(A) the adverb "intentionally" is used both to modify the verb "Fail" in subsection (2) and to modify the verbs "prejudice or damage" in subsection (3). As noted above, we have found that he "intentionally" failed to carry out his contract of employment as the adverb is used with respect to the kind of unprofessional conduct with which subsection (2) deals. With respect to the charge of violation of subsection (3), it might be argued that since he "intentionally" failed to carry out his contract to perfect an appeal, he must have intended the consequences that were sure to follow, namely, the loss of the opportunity of his clients to correct error, if any, in the trial court. On the other hand, it is arguable that in the context of the conduct meant to be proscribed by subsection (3), the adverb is used to denote the purpose or motive of the lawyer.

The possible distinction was not argued to us by either the Oregon State Bar or the accused. We are reluctant to lay down a rule of law as to the meaning of the adverb as used with respect to DR 7-101(A)(3) in the absence of adversarial briefing or even because a particular accused does not raise the issue. We shall assume, for the purpose of this decision, that a lawyer is not guilty of a violation of subsection (3) unless his purpose is to prejudice or damage his client. There is no evidence of that purpose in this case, and we therefore find the accused not guilty of that charge.

■ In a fourth cause of complaint the Bar charged that in the aggregate the acts of unprofessional conduct charged in the first three causes were such as to bar the accused from admission to practice if he were now applying for admission. *See,* ORS 9.480(1):

> "The Supreme Court may disbar, suspend or reprimand a member of the bar whenever, upon proper proceedings for that purpose, it appears to the court that:

> "(1)  The member has committed an act or carried on a course of conduct of such nature that, if the member

were applying for admission to the bar, the application should be denied."

The Trial Board and the Disciplinary Review Board found the accused guilty of this charge. Whether they would have done so had they made the same finding we have with respect to the third cause of complaint is problematical. At any rate, the charges in this matter and the record all concern a course of conduct with respect to but one legal matter and, in the circumstances, we find the charge in the fourth cause of complaint not to have been established.[3]

Before turning to decision as to the appropriate sanction, we must address an aspect of this proceeding that does not appear from the facts stated by the accused in his brief. The record discloses that the accused made no answer to the four causes set forth in the complaint of the Oregon State Bar and that he did not appear at the time and place set for trial of the charges before the Trial Board. We infer from the record that perhaps the accused did, not have official notice of the time and place of trial, but that, if so, it is because of his failure to keep the Oregon State Bar advised as to his business and personal addresses, or either thereof. Beyond that, effort was made to reach him with such notice by telephone, but such efforts directed to his Salem telephone numbers were fruitless because of disconnections. In any event, lack of adequate notice has not been asserted by the accused, and upon oral argument in this court his counsel acknowledged that before the Trial Board a fair hearing took place.

The Trial Board, other than noting the failure of the accused to appear, either in person or by counsel, appeared not to have considered the failure of the defendant to respond to the charges made in this proceeding. The Trial Board recommended to this court that the accused be suspended from practice for one year and thereafter until he might show to the Bar and this court that he might be fit in all respects to be allowed to resume practice.

---

[3] Since the time the complaint in this case was filed, the court has modified Section 17 of the Rules of Procedure Relative to Admission, Discipline, Resignation and Reinstatement so as to delete from the prescribed form of complaint the "aggregate" cause.

The Disciplinary Review Board's opinion was as follows:

> "The Disciplinary Review Board having reviewed the transcript and exhibits received from the Trial Board in the above matter concurs with the findings of fact by the Trial Board and the recommendation of the Trial Board that the accused be suspended for one year. While a one year suspension might be rather severe for the types of complaints made against the accused we are mindful of the fact that similar complaints have been made against the accused previously. On those prior occasions, the accused justified his conduct on certain personal factors. The fact he failed to appear in this proceeding indicates that the problems are of a more serious nature."

The reference to the accused's previous conduct concerned that described in *In re Rudie,* 290 Or 471, 484, 622 P2d 1098, 1106 (1981). There we found the accused guilty of neglecting a legal matter and publicly reprimanded him.

■ The accused in this court maintained that the Disciplinary Review Board should not have been concerned with that prior misconduct. In this respect he is mistaken. *See, In re Kraus,* 289 Or 661, 616 P2d 1173 (1980). This court regards a record of previous unprofessional conduct of a similar nature to be a matter of importance.

■ The accused in this court maintained further that the Disciplinary Review Board drew an unwarranted inference that the accused's failure to appear in this matter showed that the accused's problems with being able to accord his conduct with the requirements of the Code of Professional Conduct were of a "more serious nature." Again, the accused is mistaken. While the failure to respond by answer or appearance may not have been a violation of the disciplinary rules, it demonstrates lack of an important element of professionalism. *See, in re Geurts,* 290 Or 241, 247, 620 P2d 1373 (1980). *See also, In re Rudie,* 290 Or at 485, 622 P2d at 1106.

The accused's position before this court was that any suspension for longer than 60 days would be excessive in light of this court's previous holdings and that this record actually justifies no more than a public reprimand. We most emphatically do not agree.

■ We now turn to what the proper sanction should be. Disciplinary sanctions are not designed as punishment. Rather, they are, as we said long ago in *Ex parte Finn,* 32 Or 519, 52 P 756 (1898), " 'for the protection of the court, the proper administration of justice, and the dignity and purity of the profession and for the public good and the protection of clients.' " *Id.* at 531. In pursuit of these objectives, the court examines several factors: the seriousness of the accused's actions, the reason why the accused acted in that fashion and the likelihood of the accused repeating his mistakes. In cases of relatively minor misconduct or where the misconduct appears to be only a temporary abberation, a reprimand is imposed. *See In re Paxton,* 280 Or 797, 572 P2d 1032 (1977). Where a lawyer has acted willfully and dishonestly, the lawyer will be disbarred. *See In re Thomas,* 294 Or 505, 659 P2d 960 (1983). With those cases that fall in between, the court will usually suspend the lawyer or place him on probation or both. In all cases the goal is to protect clients, the public and the administration of justice. For example, in *In Re Lewelling,* 244 Or 282, 417 P2d 1019 (1966), alcoholism led a lawyer to neglect his professional duties. At trial the defendant made a showing that he was successfully treating his problem, and we noted none of his clients had lost money as a result of his neglect. We suspended the lawyer for two years but withheld imposition of the sanction as long as he abstained from drink and did not repeat his past instances of neglect. Similarly, in *In re Varnes,* 285 Or 463, 591 P2d 366 (1979), we faced a lawyer who suffered from periodic bouts with depression that caused him to neglect his work. His psychiatrist testified that the problem could be controlled with medication. We placed Varnes on continuous probation and required that he continue to see the psychiatrist. In *In re Loew,* 292 Or 806, 642 P2d 1171 (1982), "lawyer burnout" caused the lawyer to delay the filing of a brief. Loew, because of his illness, kept procrastinating; eventually another lawyer had to take the case. We noted that this appeared to be an isolated instance. We suspended Loew for 30 days and required a psychiatrist's statement before he would be readmitted to practice.[4] Similarly, in the first

---

[4] *See also, In re Loew,* 294 Or 674, 661 P2d 922 (1983).

Rudie disciplinary case, Rudie testified that his parent's death left him too preoccupied with family affairs and too distraught to function effectively in his practice. These extenuating circumstances led us to lessen the sanction we might otherwise have imposed.

In *In re Holm,* 285 Or 189, 590 P2d 233 (1979), we suspended a lawyer for two months for neglecting to record a client's deed, forcing the client to seek other counsel to perfect his title. A 60-day suspension was proper as it was Holm's first neglectful act. In *In re Berg,* 276 Or 383, 554 P2d 509 (1976), the lawyer was guilty of gross procrastination and neglect in handling the legal affairs entrusted to him. He also falsely represented the status of the client's case in order to cover up the result of his neglect. In that case we found it proper to suspend Berg for one year and to place him on a three year probationary period following the suspension. *See also, In re Kraus, supra.* Rudie's action falls in between Holm's and Berg's. It is the second time he has been neglectful. His actions seriously harmed his client, but he did not lie to try and cover up his neglect as Berg had done.

We are of the opinion that the accused's misconduct requires that he be suspended from the practice of law for seven months; moreover, the suspension will continue until the accused has applied for reinstatement, which will be allowed only upon an affirmative showing by the accused that he is in all respects fit to be readmitted to the practice of law.[5]

It is so ordered, and the Oregon State Bar is awarded judgment against the accused for its costs and disbursements. ORS 9.535(4).

---

[5] *See,* Section 18 of the Rules of Procedure Relative to Admission, Discipline, Resignation and Reinstatement.