Submitted on record and brief of Oregon State Bar on January 24, as to 82-56 and 82-130, submitted on record February 21 as to 83-15 and 83-16, accused permanently disbarred March 6, 1984

In re Complaints as to the Conduct of

# JOHN HILLS,

*Accused.*

(OSB 82-56 and 82-130; 83-15
and 83-16 SC S30023)

678 P2d 262

Robert J. Miller and Mary Chaffin of Black, Tremaine, Higgins, Lankton & Krieger, filed the brief for the Oregon State Bar on 82-56 and 82-130.

No appearance contra.

PER CURIAM

## PER CURIAM

On January 5, 1983, the Oregon State Bar served the first of two complaints on John Hills accusing him of unethical conduct. The first complaint consisted of three separate causes. The first cause involves Hills' conduct during and after the course of his representation of Mr. and Mrs. Clive Cashman. The second cause involves Hills' conduct in drawing partnership agreements for and obtaining loans from Leonard Cebula. The third cause involves Hills' conduct in issuing a check from his clients' trust account to Judy Thompson.

On April 6, 1983, a hearing on the first complaint was conducted before the Trial Board. That hearing was continued to April 25, 1983. Hills did not appear on either date.[1] On June 10, 1983, the Trial Board issued an order of default and on July 1, 1983, filed its findings, conclusions and recommendations.

After taking testimony, the Trial Board recommended that Hills be suspended indefinitely[2] from the practice of law in Oregon and be required to take and pass the Legal Ethics examination as a condition to reinstatement to active practice. The Disciplinary Review Board recommended that Hills be permanently disbarred from the practice of law. In its brief to this court on the first complaint, the Oregon State Bar recommends that Hills be permanently disbarred.

On July 13, 1983, the Oregon State Bar served the second complaint on John Hills accusing him of unethical conduct in two causes. The first cause involves Hills' conduct during and after his representation of Shirley Snowe. The second cause involves his representation of Paul White.

On October 24, 1983, a hearing on the second complaint was held before the Trial Board and Hills again failed to

---

[1] Service of the Complaint and Notice to Answer was made pursuant to Oregon State Bar Rule of Procedure, Section 28 (now Oregon State Bar Rule of Procedure 4.2), on January 5, 1983. In addition, Hills was personally served with the Complaint and Notice to Answer on April 21, 1983. At that time he was notified that the hearing had been continued to April 25, 1983.

[2] As of January 1, 1984, under Oregon State Bar Rule of Procedure 6.1 there is no sanction called "indefinite" suspension. The maximum period of time a person can be suspended is three years.

appear. The Trial Board issued an order of default and recommended that Hills be permanently disbarred. The Disciplinary Review Board also recommended permanent disbarment. We find that Hills violated the disciplinary rules set out below and order his permanent disbarment.

## FIRST COMPLAINT

*Cashmans*

After reviewing the record of the first cause of the first complaint, we find that in January, 1980, Mr. and Mrs. Clive Cashman consulted with Hills to obtain legal advice regarding a real estate transaction. During the course of his representation of the Cashmans, Hills learned they had approximately $60,000 in cash they wished to invest. Hills advised the Cashmans of an investment opportunity in a mobile home park in Salem, Oregon, in which Hills had a financial interest. On June 26, 1980, the Cashmans gave him a cashier's check in the amount of $30,000 and received a promissory note, signed by Hills and two other persons whose signatures are illegible. The promissory note provided for an interest rate of 18 percent. The interest was to be paid in monthly installments of $450 for six months, and the principal was to be repaid after six months.

Beginning in October, 1980, the Cashmans had extreme difficulty in obtaining any payments from Hills. Hills repeatedly advised them that payments would be forthcoming, but payments were consistently made late and in an amount less than $450. Nearly one year later, Hills tendered to the Cashmans a check in full payment of the loan. They subsequently presented the check to a bank and it was returned for insufficient funds.

At no time did Hills advise the Cashmans to seek independent legal counsel before making the loan to him.

Hills was charged with violations of DR 1-102(A)(4) and (6), DR 5-104(A), and DR 7-102(A)(5). DR 1-102(A)(4) and (6) of the Code of Professional Responsibility provide:

"DR 1-102 Misconduct.

"(A)   A lawyer shall not:

"* * * * *

"(4)   Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

"* * * * *

"(6)   Engage in any other conduct that adversely reflects on his fitness to practice law."

We conclude that Hills engaged in conduct involving dishonesty, fraud, deceit and misrepresentation in his dealings with the Cashmans. Hills told the Cashmans they could obtain the loan principal at any time and that funds were available to pay the note. We find from the evidence that Hills wrote a check to the Cashmans knowing that there were insufficient funds in the account. Hills' conduct violated DR 1-102(A)(4) and (6).

DR 5-104(A) of the Code of Professional Responsibility provides:

"DR 5-104 Limiting Business Relations with a Client.

"(A)   A lawyer shall not enter into a business transaction with a client if they have differing interests therein and if the client expects the lawyer to exercise his professional judgment therein for the protection of the client, unless the client has consented after full disclosure."

In *In re Bartlett,* 283 Or 487, 584 P2d 296 (1978), we held that in any situation in which a lawyer enters into a business transaction with his client where they have differing interests, and the client expects the lawyer to exercise his professional judgment, the lawyer must advise his client to seek independent legal advice. In this case, the Cashmans not only entered into business transactions with Hills, but also relied on Hills' professional judgment. Furthermore, Hills did not advise the Cashmans that their interests were adverse to his or that they should seek independent legal counsel before entering into the transactions. Hills' conduct was and is unethical and a violation of DR 5-104(A).

DR 7-102(A)(5) of the Code of Professional Responsibility provides:

"DR 7-102 Representing a Client Within the Bounds of the Law.

"(A)  In his representation of a client, a lawyer shall not:

"* * * * *

"(5)  Knowingly make a false statement of law or fact."

The evidence proves that Hills told the Cashmans that funds were available to pay them when they were not. Hills' conduct violated DR 7-102(A)(5).

*Cebula*

We reviewed the record on the second cause of the first complaint and find that Hills met Leonard L. Cebula in April, 1980, to discuss investment opportunities with Hills. Hills told Cebula that he wanted to borrow money from Cebula in order to invest in various real properties. Between April, 1980, and February, 1981, Cebula loaned funds to Hills. None of the loans was secured. In July, 1981, at Cebula's request, Hills gave Cebula a trust deed as security for the loans. Cebula asked Hills to record the trust deed and was told that it would be recorded promptly. The trust deed was not recorded until December 31, 1981, at which time there were four prior trust deeds, claims for unpaid taxes, and a judgment filed against the property. Hills became delinquent in making loan payments to Cebula and in November, 1981, Hills tendered checks to Cebula as payments on his loans. The checks were returned for insufficient funds.

During the same time period, Cebula entered into partnerships with Hills. Hills represented to Cebula that Cebula would be a limited partner. Hills drew up the partnership agreements and Cebula and Hills signed them. It was not until the Trial Board hearing that Cebula discovered he was not a limited partner in the partnerships, but was instead a general partner.

At no time did Hills advise Cebula to seek independent legal counsel before making the various loans to him or entering into the partnerships with him. For this conduct, Hills was charged with violating DR 1-102(A)(4) and (6), and DR 5-104(A), set out *supra* at 3 and 4.

We conclude that Hills violated DR 1-102 when he misrepresented to Cebula that Cebula would be a limited partner in the partnerships Hills was arranging. In fact, Hills

made Cebula a general partner. Further, Hills violated DR 5-104 when he and Cebula entered into business transactions in which Cebula relied on Hills' professional judgment and about which Cebula was never advised by Hills to seek independent legal counsel.

*Thompson*

In our review of the evidence in the third cause of the first complaint, we find that in February, 1982, Judy Thompson retained the services of Hills and mailed a check in the amount of $1,000 made payable to Hills' clients' trust account. In June, 1982, Thompson asked Hills to return the balance of $500 still remaining in her account. He delivered to Thompson a check on his clients' trust account in the amount of $500 and she presented the check to a bank. The check was returned for insufficient funds. Thompson called Hills regarding the dishonored check and was informed by him that the bank had made an error. Thompson tendered the check again and the bank again refused to honor it. Thompson demanded that Hills deliver to her a cashier's check in the amount of $512, the additional $12 to cover the costs of collection. He promised to deliver a cashier's check in that amount, but to date Thompson has not been paid the amount owed to her.

For this conduct with Thompson, Hills was charged with violating DR 1-102(A)(4) and (6), set out *supra* at 3. We find that Hills wrote a check to Thompson on his clients' trust account knowing the check would be returned for insufficient funds. Hills then assured Thompson that the bank made the error and promised to deliver a cashier's check to her. No check was delivered. This conduct of Hills' violated DR 1-102.

Hills was also charged with a violation of DR 9-102(B)(4), which provides:

"DR 9-102 Preserving Identity of Funds and Property of a Client.

"* * * * *

"(B)   A lawyer shall:

"* * * * *

"(4)   Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the

lawyer which the client is entitled to receive."

In *In re Gordon W. Smith,* 241 Or 542, 407 P2d 643 (1965), we held that Smith had violated the standards of professional conduct when he issued three checks, drawn on insufficient funds, to clients in payment of money he had received in trust for the clients' accounts. In this case, we find that Hills violated DR 9-102(B)(4) when he wrote a check to Thompson on his clients' trust account knowing that there were insufficient funds to cover the check and when he failed to preserve and return funds belonging to Thompson.

## SECOND COMPLAINT

*Snowe*

After reviewing the record of the first cause of the second complaint, we find that in August, 1980, Shirley Snowe retained Hills to represent her for the purpose of obtaining a dissolution of her marriage and an equitable division of the marital property. During the course of his representation, Hills learned that she had approximately $15,000 invested in a money market account which was producing a yield of approximately 12 percent. Snowe informed Hills that she was unhappy with this rate of return. In October, 1980, Hills offered to borrow $15,000 from Snowe at 18 percent interest. He represented to Snowe that the money would be used to purchase an apartment complex in northeast Portland and that Snowe would have security in the property to protect her loan.

Snowe lent Hills $15,000 and he told Snowe that the money would be placed in a money market account until he closed the purchase of the northeast Portland apartments. Snowe was given a receipt for the $15,000 but was given no security at the time of the loan.

In January, 1981, Snowe began having difficulty reaching Hills. When she did reach him, she requested and Hills prepared a promissory note reflecting her $15,000 loan, which was backdated to December 1, 1980. In April, 1981, Snowe demanded return of the principal and in August, 1981, Hills issued a check to Snowe for the entire principal and accrued interest with the knowledge that this check would be returned for insufficient funds. Snowe presented the check to

the bank several times and it was returned for insufficient funds on each occasion.

Snowe secured the services of another attorney to seek the balance remaining on the loan. Hills agreed to repay the loan as soon as he was able and agreed to provide security for the loan by way of an assignment of his interest as vendor in a land sale contract. The assignment proved to be worthless. Snowe has not received the balance owing on the loan.

Hills was charged with violating DR 1-102(A)(4), set out *supra* at 3. The evidence shows that Hills engaged in conduct involving deceit in his dealings with Snowe because he issued Snowe a check knowing it would be returned for insufficient funds. Hills' conduct violated DR 1-102(A)(4).

Hills was also charged with violating DR 5-104(A), set out *supra* at 4. Hills entered into a business transaction with Snowe in which she relied on his professional judgment. Hills never advised her to seek independent legal advice before entering into the transaction. Hills violated DR 5-104(A).

*White*

The second cause of the second complaint against Hills involves his dealings with White, who retained Hills to collect several past due notes. White authorized him to send a demand letter, and if no adequate response was received, to file a complaint. Hills sent a demand letter on July 3, 1982. The demand letter did not produce any response from the obligor on the notes. Hills neither filed a complaint nor took further action to obtain the amount owed his client on the notes. Hills has not communicated with White since their initial meeting on June 29, 1982. For this conduct, Hills has been charged with violating DR 6-101(A)(3), which provides:

"DR 6-101 Failing to Act Competently.

"(A)   A lawyer shall not:

"\* \* \* \* \*

"(3)   Neglect a legal matter entrusted to him."

Hills was employed by White to handle a collection matter. Hills sent out a demand letter but did not take any other action and has not contacted his client since June, 1982.

Hills neglected the matter entrusted to him and in so doing violated DR 6-101(A)(3).

In summary, we find that Hills, in his dealings with five separate parties, violated DR 1-102(A)(4) and (6), DR 5-104(A), DR 7-102(A)(5), DR 9-102(B)(4) and DR 6-101(A)(3). Because of these multiple serious violations, the accused, Mr. John Hills, is permanently disbarred from the practice of law. The Oregon State Bar is awarded its actual and necessary costs and disbursements. ORS 9.535(4).