Argued and submitted November 3, 1983, reprimanded March 20, 1984

In Re: Complaint as to the conduct of

# KAREN L. ZUMWALT,
*Accused.*

(OSB 82-97, SC 29774)

678 P2d 1207

David L. Slader, Portland, argued the cause for the accused. With him on the briefs was Hoffman, Slader & Matasar, Portland.

Lawrence B. Hunt, Portland, argued the cause for the Oregon State Bar. With him on the brief was Becker, Sipprell & Hunt, Portland.

PER CURIAM

## PER CURIAM

In this disciplinary proceeding, the Oregon State Bar charged the accused with violating two parts of the Code of Professional Responsibility. In its first cause of complaint, the Bar charged the accused with a violation of DR 1-102(A)(4) which prohibits a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation.[1] In the second cause, the accused was charged with a violation of DR 7-102(A)(2) for knowingly advancing a claim or defense that is unwarranted under existing law.[2] At the time the acts occurred that are the bases of the complaint, the accused was a sole practitioner with slightly over one year of experience.

After the accused filed her answer herein and shortly before the hearing, counsel for the Bar and for the accused agreed upon disposition of this matter. However, this agreement was not in accordance with the Oregon State Bar Rules of Procedure.[3] Section 37.1(a) and (c) of the rules set forth the procedure for discipline by consent through the use of a stipulation for discipline.[4] The "stipulation" was contained in

---

[1] "DR 1-102 Misconduct.

"(A) A lawyer shall not:

"* * * * *

"(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

"* * * * *."

[2] "DR 7-102 Representing a Client Within the Bounds of the Law.

"(A) In his representation of a client, a lawyer shall not:

"* * * * *

"(2) Knowingly advance a claim or defense that is unwarranted under existing law, except that he may advance such claim or defense if it can be supported by good faith argument for an extension, modification, or reversal of existing law.

"* * * * *."

[3] The Rules of Procedure were amended substantially on January 1, 1984, and are applicable to proceedings in which a formal complaint is filed after that date. Rules of Procedure (new) BR 1.5(a). The formal complaint in this case was filed on November 12, 1982, and the old rules will apply. The provision for stipulation for discipline in the new rules is BR 3.6.

[4] "Section 37.1. Discipline by Consent. (Effective July 8, 1981)

"(a) Any formal disciplinary complaint may be disposed of by a no contest plea, or by a stipulation for discipline, entered into at any time after service of the formal complaint upon the accused.

a letter from the accused's attorney to trial counsel for the Bar, agreed to at the time of the hearing by the Bar's trial counsel under instruction from the Bar, and read into the record. The agreement also provided for the accused's withdrawing her answer and admitting the allegations of the complaint. The accused testified that she agreed to the "stipulation." Although we are not bound by the Bar's agreement, we note the Bar's concurrence as to the appropriate sanction.

■ The Trial Board, based upon the evidence produced at the hearing, concluded that the accused's conduct was unethical and in violation of both DR 1-102(A)(4) and DR 7-102(A)(2); it recommended that the accused receive only a public reprimand because she had not previously been disciplined and because both the Bar and the accused had stipulated to a sanction acceptable to the Trial Board. The Trial Board specifically recommended against a suspension from the practice of law. The Disciplinary Review Board concurred with the Trial Board's recommendation that the accused receive a public reprimand. We conclude that the appropriate sanction is a public reprimand.[5]

■ Although we make an independent review of the evidence, *In re Robeson,* 293 Or 610, 629, 652 P2d 336 (1982), our brief summary of the facts primarily is drawn from the

---

"* * * * *

"(c) A stipulation for discipline shall be verified by the accused and shall include:

"(1) A statement that the stipulation has been freely and voluntarily made by the accused;

"(2) A statement that explains the particular facts and violations the State Bar and the accused are stipulating to;

"(3) A statement that the accused agrees to accept a designated form of discipline in exchange for the stipulation, if accepted by the Supreme Court;

"(4) A statement of the accused's prior record of reprimand, suspension or disbarment, or any absence of such record.

"* * * * *."

Compliance with Section 37.1 could be important because our review of cases of discipline by consent is limited to acceptance or rejection of the stipulation. We cannot change the agreed-upon sanction. *In re Glenn,* 294 Or 72, 75, 653 P2d 990 (1982). Because of the result we reach in this case as to the appropriate sanction, the failure of the "stipulation" to conform to the procedure for discipline by consent is unimportant.

[5] For some time, this court has rejected the practice of a private reprimand, as distinguished from a public reprimand. If the court imposes a reprimand, it will be public. *See* BR 6.1(a)(ii).

findings of fact by the Trial Board. The accused undertook the representation of Mr. Vande Veegaete in early October 1981, in respect of a wage claim the client had against Dr. Morse. Vande Veegaete originally had brought the matter in the Small Claims Department of the District Court for Multnomah County, without an attorney, *see* ORS 46.405 *et. seq.* Morse, through his attorney, had the case transferred to District Court. ORS 46.461. At this point, the accused became involved in the case. After talking with her client, the accused telephoned Morse's attorney to discuss settlement of the claim. The settlement suggested by the accused was the payment by Morse of $146.50 and the return of some books. Because of the statutory requirement that the formal complaint be filed within 20 days after the transfer to District Court, the accused asked that Morse's attorney accept the settlement by Friday, October 9, 1981. Having not heard from Morse's attorney by that deadline, the accused filed a formal complaint in District Court.

On the following Monday, October 12, 1981, a check from Morse's attorney in the amount of $146.50 was received by the accused. The accused advised Morse's attorney that the settlement payment had not been timely made and returned the settlement check to Morse's attorney. On November 4, 1981, Morse's attorney filed an answer in District Court to the complaint and accompanied the answer with an offer of compromise for $146.50. A copy of the answer and offer of compromise was sent to the accused, along with the check for $146.50. Morse's answer contained an affirmative defense that settlement had been reached. His attorney informed the accused that she would be the principal witness on that affirmative defense and that, consequently, her client would need other counsel.

After discussing the matter with her client, the accused advised Morse's attorney that the original settlement offer was acceptable to her client and, on or about November 6, 1981, the accused endorsed and negotiated the check that had accompanied the offer of compromise. The accused then prepared and submitted to Morse's attorney a confession of judgment, which she requested that Morse sign and return for filing with the District Court. Morse signed the confession of judgment and returned it to the accused with a second check in the sum of $146.50, this time made payable to the District

Court Clerk. The confession of judgment and the check were delivered to the clerk. The clerk then sent a check in the same amount to the accused. On November 29, 1981, the accused disbursed to herself and her client the proceeds of the second check.

The evidence before the Trial Board also discloses substantial bitter feelings by the accused toward Morse's attorney, particularly with reference to what the accused perceived to be a maneuver by Morse's attorney to use a spurious tactic to get her off the case and to exploit her client's unfavorable financial condition. Apparently, the accused, upon receiving the proceeds of the second check from the District Court initially rationalized that the money was not sent inadvertently but as part of the settlement because of the personal relationship between her client and Morse and a closer approximation of what out-of-pocket loss her client had suffered. She also rationalized that the second check was being tendered in satisfaction of the confession of judgment as separate from the initial check.

Some three months after disbursing the proceeds of the second payment, when the double payment was brought to the attention of the accused by Morse's attorney, she informed Morse's attorney that the total sum was a reasonable amount for the resolution of the claim and that Morse should be satisfied with the outcome of the case. She did not then refund the double payment. Some months later, she did repay Morse the full amount of the second check. Because the client refused to pay, she made the payment entirely out of her own funds.

The gist of the accused's conduct was the wrongful taking of another person's money and the continued withholding of that money for a period of several months despite demands for its return:

There is no question but that this is a serious breach of professional ethics. Thus, the issue before us is the appropriate sanction. The accused's conduct was unjustifiable and inexcusable. However, in this case, the Bar, the Trial Board, and the Disciplinary Review Board recommend a reprimand rather than any suspension. It is apparent from the record in this case that the accused was driven to her misdeeds by anger and frustration, neither of which emotional response justifies

her actions. But we are mindful that the purpose of the sanction is the protection of the public and that the punishment of the accused is only incidental. *In re Boyer,* 295 Or 624, 630, 669 P2d 326 (1983). We have reviewed the file and exhibits and conclude that, in the circumstances of this case, a public reprimand would be the appropriate sanction.

Accused reprimanded. The Oregon State Bar is awarded its actual and necessary costs and disbursements. ORS 9.536(4).