Argued and submitted November 5, 1986, accused suspended for 30 months
April 14, 1987

In re Complaint as to the Conduct of
# KAREN J. WILLER,
*Accused.*
## (OSB 85-20; SC S32931)
735 P2d 594

Thomas E. Cooney, Portland, argued the cause for accused. On the brief and reply brief was Alan R. Beck, Portland.

George A. Riemer, General Counsel, Portland, argued the

cause for the Oregon State Bar. On the brief was Mark M. Williams, Assistant General Counsel, Portland.

PER CURIAM

## PER CURIAM

This is a lawyer disciplinary case wherein the accused was charged by a formal complaint of the Oregon State Bar on November 12, 1985, with three causes of complaint involving seven violations of the Disciplinary Rules and six violations of the governing statutes. The matter is before us on *de novo* review. ORS 9.536(3).

Each of the alleged acts of misconduct stems from the representation of a single client, Bank of Oregon (the bank), in a variety of matters. In general, the first cause of complaint involves false and misleading reports from the accused to the client; the second cause of complaint involves false and misleading billing statements from the accused to the client; and the third cause of complaint involves the alleged failure of the accused to perform work for the client.

### FIRST CAUSE

From about January 1983 to about June 1984, the accused undertook to represent the bank in a variety of matters. The accused was charged with filing false and misleading litigation reports to the bank in seven separate cases. In each case, the accused misrepresented the status of litigation. In an eighth case, the accused was charged with preparing and submitting to the bank a false Notice of Sheriff's Sale.

The Bar charged the accused with violating DR 1-102(A)(4),[1] DR 7-102(A)(5),[2] ORS 9.460(4)[3] and ORS

---

[1] DR 1-102(A)(4) provided:

"A lawyer shall not:

"Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation."

Subsequent to the conduct of the accused, this Disciplinary Rule was amended in an immaterial particular and is now numbered DR 1-102(A)(3).

[2] DR 7-102(A)(5) provided:

"In his representation of a client, a lawyer shall not:

"Knowingly make a false statement of law or fact."

This disciplinary rule has been amended in an immaterial particular.

[3] ORS 9.460 provides, in relevant part:

"An attorney shall:

"* * * * *

"(4) Employ for the purpose of maintaining the causes confided to him, such

9.527(4) and (5).[4] By her answer, the accused admitted that she made misleading statements regarding the status of the legal matters referred to in the complaint. The trial panel found her guilty of violating both the Disciplinary Rules and the statutory prohibitions, finding that the litigation reports "were at least false in part."

■ As noted above, the Bar charged the accused under two separate provisions of the Disciplinary Rules, DR 1-102(A)(4) and DR 7-102(A)(5), for making the false and misleading representations by submitting litigation reports and a prepared Notice of Sheriff's Sale to her client. DR 7-102 deals with the representations of a client within the bounds of the law. As we noted in *In re Coe,* 302 Or 553, 568, 731 P2d 1028 (1987), the rule in question concerns conduct a lawyer might use to advance the interests of a client. Here, as there, the conduct of the accused was not taken to advance the interests of the client, quite the contrary. The false material submitted by the accused to the client was designed to advance her own interests and not those of the bank.

We turn to the alleged violations of the statutory provisions. ORS 9.460(4) has two component parts. The first sentence requires the lawyer to "[e]mploy, for the purpose of maintaining the causes confided to the attorney, such means only as are consistent with truth." Although it appears from our review of previous cases that this statutory prohibition generally has been applied to false statements made in the context of some judicial proceeding (*see Bob Godfrey Pontiac v. Roloff,* 291 Or 318, 325 n 4, 630 P2d 840 (1981) [wherein 20 disciplinary cases were reviewed]), we observed in *In re Hiller,* 298 Or 526, 531-32, 694 P2d 540 (1985), which involved the

---

means only as are consistent with truth, and never seek to mislead the court or jury by any artifice or false statement of law or fact."

[4] ORS 9.527 provides, in relevant part:

"The Supreme Court may disbar, suspend or reprimand a member of the bar whenever, upon proper proceedings for that purpose, it appears to the court that:

"* * * * *

"(4) The member is guilty of wilful deceit or misconduct in the legal profession;

"(5) The member is guilty of wilful violation of any of the provisions of ORS 9.460 or 9.510."

filing of documents with the court in order to obtain relief by summary judgment, that:

> "The obligations stated in ORS 9.460(4) and DR 1-102(A)(4) all deal with honesty, and they unquestionably overlap, but they are not identical. The primary focus of ORS 9.460(4) is on litigation. Its final provision forbids seeking to 'mislead the court or jury by any artifice or false statement of law or fact.' The beginning of subsection (4), however, is broader. It commands attorneys to employ 'such means only as are consistent with truth' in 'maintaining the causes confided to' them. It is not limited to misleading the tribunal but extends to dealing less than truthfully also with clients, opposing parties or anyone else in maintaining the client's cause."

As noted in *Hiller,* although the primary focus of ORS 9.460(4) is on litigation, the language of the first part of that subsection is broader. In *Hiller,* we observed that the proscription is not limited to misleading the tribunal, but also requires truthful dealing with the client. However, the words of the statute do import a restricted application by specifying that the untruthfulness be employed "for the purpose of maintaining the causes" of the client confided to the lawyer. Thus, the statutory proscription is circumscribed by the use of the words "purpose," "maintaining" and "causes." Although the word "causes" suggests adversarial circumstances, in the context of this statute, it does not necessarily require ongoing litigation. *But compare State ex rel Gattman v. Abraham,* 302 Or 301, 310, 729 P2d 560 (1986).

The most significant words, in the context of this case, are "purpose" and "maintaining." To violate ORS 9.460(4), the untruthfulness of the lawyer must be for the purpose of maintaining the causes of the client. Where the untruthfulness cannot be said to have arisen for the purpose of maintaining a client's cause, the statute does not come into play. As we noted in the discussion of DR 7-102, *supra,* there is a difference between unethical action taken to advance the interests of a client and unethical action that is inimical to a client's interest. Likewise, there is a difference between untruthfulness employed for the purpose of maintaining a client's cause and untruthfulness that bears no relationship to maintaining the client's cause.

In this case, we conclude that the misrepresentations of the accused to her client cannot be said to have been for the

purpose of maintaining the client's causes. Consequently, ORS 9.460(4) is not applicable to the conduct of the accused in this case.

The second part of ORS 9.460(4), admonishing lawyers "never [to] seek to mislead the court or jury," is not applicable under the facts of this case. Because ORS 9.527(5) refers to a wilful violation of ORS 9.460, it likewise is not applicable in the circumstances of this case. However, ORS 9.527(4) is applicable.

Upon our review, we conclude that the accused violated DR 1-102(A)(4) and ORS 9.527(4).

## SECOND CAUSE

For its second cause of complaint, the Bar charged the accused with submitting misleading billing statements to the bank in June 1983 and March 1984, specifying that certain legal work undertaken by the accused had been performed. The Bar alleged that the accused had not performed the work and knew that the statements were false and misleading. The Bar also alleged that the accused, nevertheless, accepted compensation from her client for work that she knew she had not performed. The foregoing accusations resulted in a claim that the accused had violated DR 1-102(A)(4),[5] DR 7-102(A)(5),[6] ORS 9.460(4),[7] and ORS 9.527(4) and (5).[8]

By her answer, the accused admitted that the March 1984, billing was misleading and that she had received some compensation for work that had not yet been completed. The trial panel found the accused guilty on all counts of the second cause of action "irrespective of which billing contained the misrepresentations." We find that the billing of March 1984, was false and misleading, at least in part. We agree with the finding of the trial panel of violations of DR 1-102(A)(4) and ORS 9.527(4). As noted in the discussion of the First Cause, we conclude that DR 7-102(A)(5) and ORS 9.460(4) and 9.527(5) are not applicable to this case.

---

[5] See n 1.

[6] See n 2.

[7] See n 3.

[8] See n 4.

## THIRD CAUSE

The Bar charged the accused in this cause of complaint with undertaking legal matters that she knew, or should have known, she was not competent to handle, neglecting various legal matters of the client, and intentionally failing to seek the lawful objectives of the client, intentionally failing to carry out the contract of employment into which she entered with the bank and intentionally damaging or prejudicing her client's interest. The particular violations of the Disciplinary Rules are: DR 6-101(A)(1),[9] DR 6-101(A)(3),[10] and DR 7-101(A)(1), (2) and (3).[11]

By her answer, the accused admitted that she undertook some legal matters for the client "with which she had

---

[9] DR 6-101(A)(1) provided:

"A lawyer shall not:

"Handle a legal matter which he knows or should know that he is not competent to handle, without associating with him a lawyer who is competent to handle it."

Current DR 6-101(A) provides that:

"A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

[10] DR 6-101(A)(3) provided:

"A lawyer shall not:

"Neglect a legal matter entrusted to him."

This disciplinary rule has been amended (in an immaterial particular) and now is renumbered DR 6-101(B).

[11] DR 7-101(A) provided:

"A lawyer shall not intentionally:

"(1) Fail to seek the lawful objectives of his client through reasonably available means permitted by law and the Disciplinary Rules, except as provided by DR 7-101(B). A lawyer does not violate this Disciplinary Rule, however, by acceding to reasonable requests of opposing counsel which do not prejudice the rights of his client, by being punctual in fulfilling all professional commitments, by avoiding offensive tactics, or by treating with courtesy and consideration all persons involved in the legal process.

"(2) Fail to carry out a contract of employment entered into with a client for professional services, but he may withdraw as permitted under DR 2-110, DR 5-102, and DR 5-105.

"(3) Prejudice or damage his client during the course of the professional relationship, except as required under DR 7-102(B)."

The foregoing disciplinary rule has been amended in immaterial particulars.

little experience." The trial panel found her guilty of violating DR 6-101(A)(1), DR 6-101(A)(3) and DR 7-101(A)(3). She was found not guilty of violating DR 7-101(A)(1) and (2).

■ At oral argument, counsel for the Bar pointed out a possible inconsistency in the conclusions of the trial panel wherein they found an absence of intent in respect of the first two alleged subsection violations but found an intentional violation of the third subsection. While it would be possible for one to be found guilty of intentionally violating one of the three acts prohibited by DR 7-101(A) and not intentionally violating one or the other of those acts, it is difficult, in the circumstances of this case, to reconcile the conclusions of the trial panel. Further, as we mentioned in *In re Rudie,* 294 Or 740, 744, 662 P2d 321 (1983), the precise nature of the "intentional" act required in DR 7-101(A) (3) is in doubt. For the reasons stated in *Rudie,* we shall again assume, for the purpose of this decision, that a lawyer is not guilty of a violation of subsection (3) unless her purpose is to prejudice or damage her client. Upon review of the record in this case, we are unable to find, by clear and convincing evidence, that the accused violated DR 7-101(A)(1), (2) or (3). We agree with the trial panel that the accused violated DR 6-101(A)(1) and (3).

Upon finding the accused guilty of violating four separate Disciplinary Rules involving misleading statements, misleading billing, incompetency and neglect, the trial panel considered disbarment but "recommended"[12] a two-year suspension, with probation for an additional three years, under certain structured requirements. The accused petitioned the court for review, urging the adoption of the "recommendation" of the trial panel with one minor modification relating to psychological counseling. The Bar responded, urging that the accused be disbarred.

We have concluded that the accused violated three separate provisions of the Disciplinary Rules and one statutory provision.

---

[12] As we noted in *In re Hedrick,* 301 Or 750, 752 n 1, 725 P2d 343 (1986):

"The trial panel of the Disciplinary Board is the equivalent of a trial court. It makes decisions and not recommendations. ORS 9.536." *See also* Oregon State Bar Rules of Procedure (Bar Rules), Title 10.

## SANCTION

■     A substantial part of the record is devoted to the accused's background, the circumstances in which she found herself at the time of her unethical conduct, her mental state at the time of her conduct and, subsequently, her general character and fitness to practice law. With the help of the briefs of the parties, we glean the following salient facts from the record. The accused was admitted to practice in September 1980, and began practicing in March of 1981. Except for one short-lived partnership, the accused has been a sole practitioner. She accepted responsibility for cases for which she had neither the competence nor the time to manage properly. At the time the accused submitted false litigation reports and billing to the bank, she fully intended to complete the work for the client. Upon demand from the bank, the accused returned approximately $4,500 to the bank, which sum included some earned attorney fees and costs advanced by the accused as well as the improperly billed amounts. After a complaint was made to the Bar, a copy of the complaint and a request for a response was mailed to the accused. The accused immediately admitted that she had misrepresented the status of the cases to the client and had billed for work not yet performed. The accused has taken steps to rehabilitate herself, including psychological counseling. Two witnesses testified in her behalf, suggesting that the accused was a truthful and conscientious person and that she was a fit and proper person to practice law.

The circumstances of this case present the classic scenario of an inexperienced lawyer who accepts work beyond her competency and capacity and, when faced with almost certain disaster, continues to dig herself further into trouble rather than seeking help. For instance, the Lawyer-to-Lawyer Program sponsored by the Lawyer Referral Service of the Bar may have been of some assistance to the accused.

The Bar has summarized its argument for disbarment as follows:

"A.   The Accused accepted work she was incapable of completing in a timely and competent fashion in violation of DR 6-101(A)(1) and (3). The Accused subsequently misrepresented the status of her work on these legal matters, in violation of DR 1-102(A)(4) and DR 7-102(A)(5), resulting in

prejudice to her client's interests in violation of DR 7-101(A)(3). The conduct of the Accused involved means which were inconsistent with the truth in violation of ORS 9.460(4). Furthermore, wilful deceit or misconduct in the legal profession and wilful violation of ORS 9.460(4) are appropriate grounds for discipline pursuant to ORS 9.527(4) and (5).

"B.   Disbarment of the Accused is warranted in this case. The multiple violations of which the Accused is guilty, the wilful nature of the dishonest conduct involved and the seriousness of the actual and potential injury to the Accused's client warrant such action."

That the misconduct of the accused is serious cannot be debated. The trial panel considered it to be "an extremely close question" whether the accused should be disbarred.

To assist us in reaching an appropriate sanction, we shall again refer to the Standards for Imposing Lawyer Sanctions adopted by the American Bar Association as an "analytical framework for the disposition of disciplinary cases." *In re Germundson,* 301 Or 656, 664, 724 P2d 793 (1986). That analytical framework calls for review of the following considerations: (1) What ethical duty was violated; (2) What was the lawyer's mental state; (3) What was the extent of the actual or potential injury caused by the lawyer's misconduct; and (4) Are there aggravating or mitigating circumstances?

*1.   Duty to Client Violated.* Through the conduct discussed above, the accused has violated her duty to her client by a lack of diligence, lack of competence, and lack of candor. ABA Standards 4.4, 4.5 and 4.6. Although the conduct of the accused involved only one client, it demonstrates a pattern of neglect. Likewise, by agreeing to handle a number and variety of legal matters for which she was not competent, without taking steps to seek assistance or properly inform her client, the accused violated her duty of competency. Finally, the submission by the accused of false litigation reports and billing demonstrated a complete lack of candor with her client.

*2.   Mental State.* The accused acted with the most culpable mental state, intent, that is to say, with a conscious objective or purpose to accomplish a particular result by misleading the client.

*3.   Injury.* As to the potential or actual injury caused by the lawyer's misconduct, the ABA Standards suggest three

classifications or levels of injury: "Serious injury," "injury" and "little or no injury." In this case, it is difficult to quantify the injury or potential injury visited upon the client. The lawyer called in to extricate the bank from its problems resulting from the misconduct of the accused testified, in part: "It is, I think, impossible to tell if there was any monetary loss that was suffered by the bank." However, the bank was "inconvenienced" and the delay caused by the misconduct of the accused resulted at least in potential injury, if not potential serious injury, to the client.

The ABA Standards suggest making an initial determination before applying any relevant, aggravating or mitigating factors. At this point, we agree with the trial panel that whether the accused should be sanctioned by a lengthy suspension or disbarment is a close question. We now turn to the aggravating and mitigating circumstances.

  *4. Aggravating and Mitigating Circumstances.* Two aggravating factors, "a pattern of misconduct" and "multiple offenses," clearly are established in this case. ABA Standards 9.22(c) and (d). To a lesser degree, there is evidence from which we can find that the accused acted out of a selfish motive to place her own self-interest above the interest of the client. ABA Standards 9.22(b). Her demonstrated desire to protect herself at the risk of the client and to obtain a monetary gain for work that she had not performed qualify as aggravating factors.

On the mitigation side of the ledger, there is an absence of prior disciplinary proceedings, personal problems did exist, timely good faith efforts to make restitution were made, full and free disclosure to the trial panel and inquiries from the Bar was made, the accused demonstrated a cooperative attitude toward the proceedings, she was inexperienced in the practice of law, she otherwise has a good reputation and character, and the accused exhibited substantial remorse for her misconduct. ABA Standards 9.32(a), (c), (d), (e), (f), (g) and (l).

Weighing the aggravating factors against the mitigating factors suggests a sanction short of disbarment. Consequently, we conclude that a 30-month suspension is an appropriate sanction. We add an obvious reminder that if the accused applies for reinstatement (BR 8.1), she should be

prepared to show that she presently possesses "good moral character and general fitness to practice law," including that she is free from the psychological problems that, according to her testimony, contributed to her misconduct.

The foregoing analysis is not discordant with sanctions imposed in other cases. While the actions of the accused constitute repetitive violations of the Disciplinary Rules (*see In re Hills,* 296 Or 526, 535, 678 P2d 262 (1984)) and involved dishonesty (*see In re Morrow,* 297 Or 808, 819-20, 688 P2d 820 (1984); *In re Hill,* 296 Or 622, 678 P2d 1218 (1984)), there are mitigating circumstances in this case. Inexperience (*In re Zumwalt,* 296 Or 631, 633, 678 P2d 1207 (1984); *In re Hopp,* 291 Or 697, 702, 634 P2d 238 (1981)), and psychological overlay (*In re Erlandson,* 290 Or 465, 470, 622 P2d 727 (1981); *In re Varnes,* 285 Or 463, 591 P2d 366 (1979); *In re Richard F. Crist,* 258 Or 88, 481 P2d 74 (1971)), have resulted in a sanction less than disbarment. *But see In re Eads,* 303 Or 111, 734 P2d 340 (1987). We deem a 30-month suspension to be the proper sanction dictated by application of the ABA Standards and our previous caselaw.

The accused is suspended from the practice of law for 30 months. The Oregon State Bar is awarded its actual and necessary costs and disbursements. ORS 9.536(4).